# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### October 2003 Session

## STATE OF TENNESSEE  v.  CLARENCE W. CARTER

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 99-C-1975     Hon. Steve Dozier, Judge**

---

**No. M2000-02230-SC-R11-CD - Filed December 19, 2003**

---

The defendant, Clarence W. Carter, was tried and convicted of conspiracy to sell cocaine and possession of cocaine with intent to manufacture, deliver or sell, and the defendant was sentenced as a Range Two multiple offender to consecutive sentences of thirty-six and sixteen years. The Court of Criminal Appeals affirmed both the convictions and sentences. Although there are several issues in this case, we granted permission to appeal primarily to determine whether the trial court committed reversible error in sentencing the defendant as a Range Two multiple offender when the only notice of intent to seek enhanced punishment filed by the State was in relation to an indictment that was superseded by the indictment upon which the defendant was tried. Additionally, the defendant argues on appeal that the indictment for possession with intent to deliver was insufficient to charge anything more than simple possession because it failed to contain the language that the defendant possessed the cocaine "with intent to deliver." Upon review, we conclude that the notice of intent to seek enhanced sentencing was sufficient as to the possession charge, but was not sufficient as to the conspiracy charge because conspiracy was not charged in the original indictment for which notice was given. We also hold that the indictment was sufficient to charge the offense of possession with intent to deliver. Finally, we hold that the defendant's remaining arguments regarding the sufficiency of the evidence and length of sentence are without merit. The case is therefore remanded to the trial court for re-sentencing on the conviction for conspiracy to sell cocaine.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Criminal Appeals Affirmed in Part and Reversed in Part;**
**Case Remanded**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, Jr., and JANICE M. HOLDER, JJ. joined.

1

C. Edward Fowlkes and John E. Herbison, Nashville, Tennessee, for the appellant, Clarence W. Carter.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; John Zimmermann, Assistant Attorney General; and Ana Escobar, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

After months of police surveillance, the defendant, Clarence Carter, and his acquaintance, Reginald Hutchinson, were arrested on November 19, 1998. Prior to the arrest, the investigating officers conducted several "trash pulls" at Hutchinson's residence on Fifteenth Avenue in Nashville and at the defendant's residence on Bess Court, likewise in Nashville. In the trash pulled from Hutchinson's residence, the officers found several small baggies with a white residue on them, a larger bag that contained a white residue, latex gloves and a bottle of Inositol.[1] The police drug dog indicated by behavior that cocaine was present on the bags found.

A search warrant was obtained for Hutchinson's residence and was carried out on November 19, 1998. When officers entered the residence, both Hutchinson and the defendant were present. The defendant was in the area of the couch in the living room, and upon the entrance of the officers, threw white powder off the table and into the air. Found near the defendant were a set of small electronic scales and a bag containing plastic baggies, latex/rubber gloves, and another set of scales. Officers discovered several bags of white powder throughout the room along with an unaccounted-for amount of powder loose on the floor. The powder was sent to the Tennessee Bureau of Investigation (TBI) for analysis. A forensic scientist from the TBI testified that the aggregate of the powder sent for testing constituted 294 grams of a substance containing cocaine.

The State also produced evidence regarding the defendant's finances. The defendant had a license for a business enterprise called Special Occasions, the gross sales for which in 1997 and 1998 amounted to approximately $3,600 each year. Anita Jackson, with whom the defendant had been living when arrested, testified as to money deposited into and withdrawn from her bank account. An apparent discrepancy of tens of thousands of dollars existed between what Ms. Jackson and the defendant earned and the money flowing through Ms. Jackson's bank account.

A two-count indictment in case 99-A-689 was returned on March 16, 1999, charging in the first count that:

---

[1] Officer Aaron Thomas testified that Inositol is used as a "cutting agent" to mix with cocaine, thereby creating greater quantity with less purity.

2

CLARENCE W. CARTER and REGINALD L. HUTCHINSON on the 19th day of November, 1998, in Davidson County, Tennessee . . . knowingly did possess with intent to deliver 300 grams or more of a substance containing cocaine, a Schedule II controlled substance in violation of Tennessee Code Annotated §[ ]39-17-417 . . . .

Count two charged that:

CLARENCE W. CARTER on the 19th day of November, 1998, in Davidson County, Tennessee . . . with the intent to go armed, did intentionally or knowingly carry a firearm, in violation of Tennessee Code Annotated §[ ]39-17-1307 . . . .

Shortly thereafter, the State filed a notice to seek enhanced punishment as to that indictment.

On September 3, 1999, the defendant was charged in a superseding four-count indictment in case 99-C-1975. The first count charged that the defendant:

on divers days between the ___ day of March, 1998 and the ___ day of November, 1998, in Davidson County, Tennessee . . . did knowingly agree with Reginald Hutchison [sic] and with others, known and unknown to the Grand Jury, that one of more of them would engage in conduct that constitutes the offense of the sale of 300 grams or more of a substance containing cocaine, . . . and in furtherance of the conspiracy did engage in one or more of the following overt acts:

1. Reginald Hutchison [sic] maintained a house at 1218 15th Avenue South with the purpose of storing, repackaging, and safekeeping cocaine;

2. The Defendant Clarence William Carter did possess, on November 19, 1998, over 26 grams of cocaine . . . .

The second count charged that the defendant:

knowingly did possess 26 grams or more of a substance containing cocaine, a Schedule II controlled substance in violation of Tennessee Code Annotated §[ ]39-17-417 . . . .

The third count charged that the defendant:

with the intent to go armed, did intentionally or knowingly carry a firearm, in violation of Tennessee Code Annotated §[ ]39-17-1307 . . . .

Finally, the fourth count of the indictment charged that the defendant:

on or about the 25th day of October, 1998, in Davidson County, Tennessee . . . did

3

knowingly use proceeds derived directly or indirectly from a specified criminal activity to conduct a financial transaction, or make other disposition, to wit: the purchase of a 1984 Honda Prelude automobile and registered in the name of Reginald Hutchison [sic], with the intent to conceal or disguise the nature, location, source, ownership, or control of the criminally derived proceeds, in violation of Tennessee Code Annotated §[ ]39-14-901 . . . .

On February 7, 2000, the original indictment was dismissed.

At the close of the defendant's proof and prior to the beginning of the State's rebuttal proof, the defendant objected to the wording of the count in the indictment charging the felonious possession. The defendant argued that because it did not include the language that the defendant knowingly manufactured, delivered, sold or possessed a controlled substance with intent to manufacture, deliver or sell a controlled substance, the indictment was insufficient to charge anything more than simple possession. The State orally moved to amend the indictment so that it included the language "possess with intent to deliver," and the trial court orally granted the motion. No written motion or order appears in the record.

A jury found defendant guilty of conspiracy to sell 300 grams or more of cocaine and possession of twenty-six grams or more of cocaine with intent to deliver; the jury acquitted him of carrying a firearm and money laundering. Over the defendant's objections, the State was allowed to introduce evidence of prior crimes to enhance sentencing to that of a Range Two multiple offender on both convictions.

The defendant filed a motion for new trial, followed by an appeal to the Court of Criminal Appeals. The Court of Criminal Appeals upheld the convictions and sentences, finding that the State did provide adequate notice of its intent to seek enhanced punishment and that while the trial court erred in allowing the State to amend the possession count in the second indictment, the existing language of the indictment was sufficient to charge possession with intent to deliver. On the defendant's remaining issues, the court found that the conspiracy count, as worded in the indictment, was valid; the evidence was sufficient to support the conviction for conspiracy; and the sentencing was not excessive. We granted review to determine, among other things, whether the notice of enhancement that was filed with respect to the first indictment carried over to the subsequent indictment.

## ANALYSIS

### *Notice of Intent to Seek Enhanced Punishment*

The defendant alleges on appeal that the State provided insufficient notice of its intention to seek sentencing as a Range Two multiple offender because the notice was filed in reference to the first indictment, which was dismissed, and no notice was filed on the second indictment. Because this is a question of law, our review is de novo. State v. Davis, 940 S.W.2d 558, 561 (Tenn. 1997).

4

In Tennessee, a criminal defendant has the right to receive notice when the State intends to seek enhanced punishment. Tenn. Code Ann. § 40-35-202(a) (2003). The statute provides:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea . . . . Such statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions.

Tenn. Code Ann. § 40-35-202(a) (2003).

The district attorney has the discretion to seek enhanced sentencing, and it is the district attorney's responsibility to provide notice to the court and the defendant pursuant to statute. See State v. Adams, 788 S.W.2d 557, 559 (Tenn. 1990). The purpose of the notice is to facilitate plea-bargaining, to inform decisions regarding the entering of pleas, and to aid in trial strategy. Id.

Generally, if notice is filed late or is filed timely but is otherwise defective, the defendant must show prejudice before the notice will be rendered ineffective. See, e.g., State v. Stephenson, 752 S.W.2d 80, 81 (Tenn. 1988) (finding that notice filed the day trial began was not ineffective because the defendant failed to show prejudice or request a continuance); State v. Debro, 787 S.W.2d 932, 933-34 (Tenn. Crim. App. 1989) (finding that the notice was not ineffective despite a technical error therein because the defect was a mere clerical error of which the defendant had knowledge). On the other hand, failure to file any notice of sentencing status is grounds for re-sentencing. See State v. Pender, 687 S.W.2d 714, 719-20 (Tenn. Crim. App. 1984). The question in this case is not one of late-filed notice or defective notice, but rather whether any notice was filed with respect to the indictment on which the defendant went to trial.

About a year before trial, the State filed notice of enhanced punishment in case number 99-A-689, the original indictment under which the defendant was charged. That indictment only charged two offenses: possession with intent to deliver 300 grams or more of a substance containing cocaine and carrying a firearm. After further investigation of the case, the State returned to the grand jury and obtained a second indictment, case number 99-C-1975, lowering the amount of cocaine possessed to twenty-six or more grams and adding additional charges of conspiracy and money laundering. The first indictment was then dismissed. The State did not file any notice of enhancement with respect to this second case.

The trial court decided that 99-C-1975 superseded 99-A-689 and that the notice given under 99-A-689 sufficed for sentencing on convictions arising out of 99-C-1975. The court stated that all parties involved were aware that the defendant "had been given notice [as to his status as] a Range Two offender on the indictments that stem from the trial." The Court of Criminal Appeals agreed that the notice was sufficient because one of the offenses charged in the second indictment was

5

identical to one charged in the first indictment, all of the charges arose out of the same series of events during the same time frame, and the defendant and his counsel were on notice of the potential for sentence enhancement. In making its decision, the Court of Criminal Appeals relied on State v. Chase, 873 S.W.2d 7 (Tenn. Crim. App. 1993) and State v. Sawyer, No. W2001-01923-CCA-R3-CD, 2002 WL 31259485 (Tenn. Crim. App. Aug. 27, 2002).

In State v. Chase, there were two indictments with a notice to seek enhanced punishment filed only as to the first indictment. The court found that the notice of enhanced punishment applied equally to the second indictment because the second indictment was a re-indictment for the same offense as charged in the first indictment. Chase, 873 S.W.2d at 9.

> [T]he notice filed in the first indictment gave the defendant fair warning that the State intended to seek an enhanced punishment for that crime. Since the defendant was well aware of the existence of both indictments and since both indictments charged the same crime, there was no reason to believe enhanced sentencing would not apply to a conviction under either indictment. The purposes of the act as set out in Adams were accomplished. The defendant was in no way misled or surprised.

Id.

The defendant in the case under submission contends that the notice under the first indictment was insufficient, arguing that any filings under that indictment did not "survive" its dismissal. He also argues that the notice was insufficient because the second indictment did not charge the same offenses as the first. It is this latter point that we find persuasive with regard to the conspiracy count of the second indictment.[2]

In both cases relied upon by the lower court, the second indictment charged exactly the same offenses as the first indictment, whereas in this case, the second indictment also contains two entirely new offenses in addition to the earlier indicted offenses. Thus the second indictment is not simply a re-indictment for the same crimes. Because of this, we find that at least as to the conspiracy charge, Carter was not provided sufficient notice of the State's intent to seek enhanced sentencing.

At the same time, however, we agree with the rationale in State v. Chase that where both indictments charge the same crime, the defendant has no reason to believe enhanced sentencing would not apply to a conviction under either indictment. Therefore, because Carter was charged with felony possession of cocaine in violation of Tennessee Code Annotated section 39-17-417 in both indictments, the notice was sufficient as to the conviction for possession with the intent to manufacture, deliver or sell.

---

[2] Because Carter was acquitted on the counts of money laundering and possession of a weapon, the question of notice as to those offenses is moot.

6

*Sufficiency of the Indictment*

The defendant argues that the trial court should have reduced the conviction for felony possession of cocaine to misdemeanor possession because the indictment failed to contain sufficient language to charge felony possession. Again, because this is a question of law, our review is *de novo*. State v. Davis, 940 S.W.2d 558, 561 (Tenn. 1997).

The possession count on which the jury tried the defendant provided as follows:

> CLARENCE WILLIAM CARTER on the 19th day of November, 1998, in Davidson County, Tennessee and before the finding of this indictment, knowingly did possess 26 grams or more of a substance containing cocaine, a Schedule II controlled substance in violation of Tennessee Code Annotated §[ ]39-17-417, and against the peace and dignity of the State of Tennessee.

At the close of proof, the defense alleged that the possession count failed to charge any crime, explaining that although the count cited Tennessee Code Annotated section 39-17-417, the remaining language of the count at best charged simple possession[3] because it did not allege that the defendant possessed the cocaine with the intent to manufacture, deliver or sell.[4] The trial court ruled that the count was not void because the count cited the statute, the substance that the defendant was charged with possessing, the amount of substance involved, and the date on which the offense allegedly occurred. While the defendant did not raise the issue of notice, the court also ruled that the language used in the indictment was sufficient to satisfy notice requirements. The State orally moved to amend the indictment to include the language "possess with intent to deliver," and the trial court granted that motion.[5]

Under both the United States and the Tennessee Constitutions, a charging instrument, such as an indictment, must inform the accused of "the nature and cause of the accusation." See U.S. CONST. amend. VI; TENN. CONST. art. I, § 9. In addition to these constitutional guarantees, the form of an indictment in Tennessee is prescribed by statute:

---

[3] "Simple possession" is defined in Tennessee Code Annotated section 39-17-418(a) (1997) as the knowing possession or casual exchange of a controlled substance. With few exceptions, this offense is a Class A misdemeanor.

[4] Tennessee Code Annotated section 39-17-417(a) (1997) provides: "It is an offense for a defendant to knowingly: (1) Manufacture a controlled substance; (2) Deliver a controlled substance; (3) Sell a controlled substance; or (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance." Possession under this section of 26 or more grams of cocaine is a Class B felony.

[5] We agree with the Court of Criminal Appeals that the trial court erred in allowing the prosecution to amend this count of the defendant's indictment after the close of proof and over the defendant's objection. Tennessee Rule of Criminal Procedure 7(b) only allows for an indictment to be amended without consent of the defendant if it is done before jeopardy attaches. However, because we find that the indictment was sufficient prior to its amendment and no new or different offense was charged, the error was harmless.

7

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment . . . .

Tenn. Code Ann. § 40-13-202 (1997).

Indictments need not conform to strict pleading requirements. See State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). Historically, strict pleading in indictments was required because offenses existed at common law and did not have elements that were easily ascertainable by reference to a statute. Id. at 728. Because such common law offenses no longer exist, to hold on to strict pleading requirements would be "embracing technicalities that are empty and without reason." Id. (quoting State v. Cornellison, 59 S.W.2d 514, 515 (Tenn. 1933)); see also State v. Hammonds, 30 S.W.3d 294, 299 (Tenn. 2000). Therefore, we have held that an indictment is valid if it provides sufficient information (1) to enable the accused to know the accusation to which answer is required; (2) to furnish the trial court an adequate basis for entry of a proper judgment; and (3) to protect the accused from a subsequent prosecution for the same offense. Hill, 954 S.W.2d at 727.

Relaxation of the strict pleading requirements is apparent in the many decisions following Hill. We have held that an indictment which references the statute defining the offense is sufficient and satisfies the constitutional and statutory requirements of Hill. See State v. Sledge, 15 S.W.3d 93, 95 (Tenn. 2000) (holding an indictment alleging that the defendant "did unlawfully kill [the victim] during the perpetration of Aggravated Robbery, in violation of T.C.A. 39-13-202" sufficient because it contained a specific reference to the statute which was "sufficient to place the accused on notice of the charged offense"); State v. Carter, 988 S.W.2d 145, 148 (Tenn. 1999) (holding that reference to the appropriate statute was sufficient in felony murder indictments alleging that the defendant did "unlawfully kill [the victims] during the perpetration of Aggravated Robbery, in violation of T.C.A. 39-13-202"); Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998) (holding that "an indictment which cites the pertinent statute and uses its language will be sufficient to support a conviction").

Additionally, we have held that an indictment need not allege the specific theory or means by which the State intends to prove each element of an offense to achieve the overriding purpose of notice to the accused. See Hammonds, 30 S.W.3d at 302 (holding that an indictment for aggravated assault was sufficient because it alleged the appropriate *mens rea*, the assault and the use of a weapon, even though the indictment failed to indicate whether the State intended to prove the underlying assault was committed by bodily injury, reasonable fear of imminent bodily injury, or offensive physical conduct); Wyatt v. State, 24 S.W.3d 319, 324 (Tenn. 2000) (upholding the validity of an indictment involving attempt which cited the relevant statute but made "no reference to the attempt statute's numbered subsections nor [did] it specify a specific act or course of conduct constituting the 'attempt to kill'"); State v. Lemacks, 996 S.W.2d 166, 172 (Tenn. 1999) (holding that the indictment for driving under the influence provided sufficient notice and that "[t]he theories available to support a conviction of that offense were not required to be included in the indictment").

8

Applying Hill and its progeny, we find that the language of the indictment, along with the specific reference to the statute allegedly violated, provided the defendant with ample notice of the offense charged. The indictment did not state a mere result or conclusion, but rather included the facts constituting the offense, including the name of the defendant, the date of the alleged offense, the amount and type of substance possessed, and the statute violated. Furthermore, because the indictment used the word "possessed" in reference to Tennessee Code Annotated section 39-17-417(a), the defendant was on notice regarding which subsection of the statute he was charged with violating. And while the indictment did not indicate whether the State was going to prove the offense as possession with intent to manufacture, deliver, or sell, the State is not required to allege the specific theory or means by which the State intends to prove each element of an offense. See Hammonds, 30 S.W.3d at 300-01. For these same reasons, the indictment also provided an adequate basis for entry of judgment and protection from re-prosecution for the same offense.

*Sufficiency of the Evidence*

The defendant argues that the evidence was not sufficient to support a conviction for conspiracy because there was no evidence of any agreement between Hutchinson and himself, an overt act, or of the 300 grams of cocaine. We agree with the Court of Criminal Appeals that the proof presented at trial supports each of the elements necessary for a conviction.

Although an accused is originally cloaked with a presumption of innocence, a jury verdict of guilty removes that presumption and replaces it with one of guilt, shifting the burden of proof to the defendant to demonstrate the insufficiency of the convicting evidence. State v. Dellinger, 79 S.W.3d 458, 489 (Tenn. 2002); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). On appeal, we must determine whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914. As such, we are precluded from re-weighing or reconsidering the evidence, State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996), nor may we substitute our own inferences for those drawn by the trier of fact from circumstantial evidence, State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

To sustain a conviction for conspiracy, the State is required to prove that

two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense.

Tenn. Code Ann. § 39-12-103(a) (2003). "No person may be convicted of conspiracy to commit an offense unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired." Tenn. Code Ann. § 39-12-103(d)

9

(2003). The offense alleged to have been the object of the conspiracy was "the sale of 300 grams or more of a substance containing cocaine . . . in violation of Tennessee Code Annotated §[ ]39-17-417."

We find that the Court of Criminal Appeals accurately summarized the evidence that supports the findings by the trier of fact:

> The sharing of vehicles and financial responsibility therefor between these two individuals suggest involvement in each other's affairs. In addition, the trash pulls . . . revealed mail belonging to the defendant and to Hutchinson intermingled in each other's garbage. These pulls also led to the discovery of an empty box of baggies . . . ; latex gloves . . . ; Inositol . . . ; and, in some of the otherwise empty bags, cocaine residue. Beyond this, the police discovered the defendant essentially surrounded by evidence of drug dealing upon executing a search warrant at Hutchinson's residence. Baggies of cocaine were in plain sight throughout the room; electric scales . . . were discovered near the defendant; a box of rubber gloves and hundreds of dollars were also located in his vicinity; etc. Moreover, two officers testified that, upon entering, they saw loose cocaine flying through the air coming from the defendant's direction. In fact, one officer stated that he had seen the defendant throw the bag of cocaine. According to yet another officer the defendant stated, while being booked, that he had been trying to knock cocaine off of the table when the officers came into the home. As previously noted, testing revealed that two hundred ninety-four grams of cocaine had been seized at the scene. Officer Danny Eddings' testimony indicated that "quite a bit" of the cocaine spilled on the carpet had not been recovered. The period of time involved in the indictment would have also included the residue above-referenced, cocaine involved in one or two sales Hutchinson acknowledged making earlier on the day of the arrest, etc.

The defendant contends that the only act he was charged with engaging in was possession, and that this was not an overt act in furtherance of the conspiracy. The acts of maintaining a structure for the storing, repackaging, and safekeeping of cocaine and possessing more than twenty-six grams of cocaine were both alleged in the indictment, and constitute actions committed in furtherance of the alleged conspiracy. Even if it were Hutchinson alone who maintained the structure, this is not fatal to the State's case, because the conspiracy statute provides that the requisite overt act may be done by the applicable defendant "or by another with whom the person conspired." Tenn. Code Ann. § 39-12-103(d) (2003). The record contains sufficient proof supporting both alleged overt acts.

As to whether there was an agreement between the parties, our courts have long held:

> To prove a conspiracy, it is not necessary that the State show a formal agreement between the parties to do the unlawful act, but a mutual implied understanding is sufficient, although not manifested by any formal words, or by a written agreement.

10

The unlawful confederation may be established by circumstantial evidence and the conduct of the parties in the execution of the criminal enterprise.

Randolph v. State, 570 S.W.2d 869, 871 (Tenn. Crim. App. 1978); see also State v. Pike, 978 S.W.2d 904, 915-16 (Tenn. 1998). Viewing the evidence in the light most favorable to the State, we conclude that the jury could reasonably infer from the aforementioned facts the existence of an agreement between Hutchinson and the defendant to sell cocaine.

Finally, as to the amount of cocaine that the State alleges the defendant conspired to sell, it is true that the total amount of substance tested by TBI was 294 grams. However, the record contains evidence regarding one or two cocaine sales made by Hutchinson on the morning of the arrest, cocaine residue found in the trash pulls, and "quite a bit" of loose cocaine left on the floor resulting from the tossing of a bag of cocaine as the search began. From such proof, the jury could reasonably infer that the defendant and Hutchinson had conspired to sell three hundred grams or more of cocaine during the months covered by the indictment on which the defendant was tried.

Thus viewing the evidence in the light most favorable to and resolving all conflicts in the favor of the State, we find sufficient proof to support each element of the conspiracy.

*Consecutive Sentencing*

As his final issue, the defendant challenges the trial court's decision to impose consecutive sentences, arguing that the acquittal on the money laundering charge precluded a finding that the defendant had deposited illicit funds into Ms. Jackson's bank account. From this premise, the defendant concludes that the trial court should not have relied upon the testimony of Ms. Jackson to find that the defendant was a "professional criminal" within the meaning of Tennessee Code Annotated section 40-35-115(b)(1) (2003).

"When reviewing sentencing issues . . . the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption of correctness "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant bears the burden of demonstrating that the sentence was improper. Id.

In finding that the defendant was a professional criminal within the meaning of Tennessee Code Annotated section 40-35-115(b)(1), the trial court relied in part on the testimony of Ms. Jackson regarding the defendant's money deposited in her bank account. Considering the amount of money deposited in relation to the amount of money the defendant listed as business income on his tax return, the trial court concluded that the defendant was not earning a living "on flowers and balloons but illegal endeavors with Mr. Hutchinson."

11

The defendant's contention that the trial court could not consider this evidence based on his acquittal for money laundering is erroneous. The indictment for money laundering focused on the purchase of a 1984 Honda Prelude and did not even mention the money deposited in Ms. Jackson's bank account. Moreover, the defendant takes the court's comments out of context. The paragraphs preceding those quoted by the defendant clarify the court's reasoning:

> But what I'm saying is, there's been other proof in the record that confirms that particular finding that this type activity -- although the police did not catch them in the act, like they did this time -- there are indications that there are other activities ongoing, illegal drug activities ongoing, that would lead the Court to believe that Mr. Carter was involved in the trafficking in large quantities of cocaine. . . .

> That's why I mentioned the trash pulls. Hadn't even gotten to the money yet, where he makes thirty-six-hundred dollars, according to the tax business records and somehow ends up with deposits in the amount of one-hundred-and-eight-thousand dollars; eleven thousand this month, ninety three hundred one month, ninety-four one month, eighty-one, ninety-one, eighty-seven.

Furthermore, the court found an additional reason for imposing consecutive sentences – the defendant had committed the crimes for which he was convicted while on probation. See Tenn. Code Ann. § 40-35-115(b)(6) (2003). The defendant was sentenced on January 10, 1994, to serve six years on supervised probation for a Class C felony conviction of conspiracy to sell cocaine and a concurrent eight years on supervised probation for a Class B felony conviction for the sale of cocaine. Also, on January 13, 1994, the defendant received another eight-year sentence to be served on probation subject to a list of conditions. After being afforded these opportunities to cease his involvement with selling cocaine, the defendant committed the offenses in this case during 1998, well within his eight-year probationary period.

Because the defendant was found to be a professional criminal and because he had committed his crimes while on probation for similar drug offenses, the trial court properly imposed sentences to be served consecutively.

**CONCLUSION**

In summary, we hold that the notice of intent to seek enhanced sentencing was sufficient as to the possession charge, but was not sufficient as to the conspiracy charge because conspiracy was not charged in the original indictment for which notice was given. We also hold that the indictment was sufficient to charge the offense of possession with intent to deliver. Finally, we conclude that the defendant's remaining arguments regarding the sufficiency of the evidence and length of sentence are without merit. The judgment of the trial court is affirmed except with respect to sentencing the defendant as a Range Two offender for the conspiracy conviction, for which the case is remanded for re-sentencing.

Because it appears to the Court that the defendant, Clarence W. Carter, is indigent, the entire costs of the appeal will be paid by the State of Tennessee.

_____
WILLIAM M. BARKER, JUSTICE