IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2016

**STATE OF TENNESSEE v. PAUL WILLIAM PURVIS**

**Appeal from the Circuit Court for Gibson County**
**No. 18583     Clayburn Peeples, Judge**

_____

**No. W2016-00386-CCA-R3-CD  -  Filed March 30, 2017**

_____


The Defendant, Paul William Purvis, entered a best interest guilty plea to theft of property valued over $10,000, a Class C felony. The guilty plea was entered several years after the State had filed a notice that it intended to seek enhanced punishment. The State's notice listed twelve prior convictions and stated that it would seek to sentence the Defendant as a Range II, multiple offender. The parties did not negotiate a sentence as part of the plea agreement but left determination of the sentence up to the court. At the sentencing hearing, the State sought to have the Defendant sentenced as a Range III, persistent offender. The trial court sentenced the Defendant to ten years' imprisonment as a Range III, persistent offender, and the Defendant appeals, asserting that he is entitled to be sentenced as a Range II offender due to the State's inadequate notice. After a thorough review of the record, we conclude that the State's notice was ambiguous. However, because the Defendant has not shown that he investigated the ambiguity and has not shown prejudice from the ambiguous notice, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Anna B. Cash, Jackson, Tennessee, for the appellant, Paul William Purvis.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Garry G. Brown, District Attorney General; and Hillary Parham (at sentencing hearing and plea hearing) and Stephanie J. Hale (at pretrial motions), Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant was indicted on July 5, 2011, for one count of theft of property valued over $60,000, a Class B felony, based on the 2010 theft of numerous antique ornaments and ceramics from the victim's place of business.

The prosecution filed a notice that the State would seek to punish the Defendant as a Range II offender and listed the following convictions as the basis for enhanced punishment:

| | |
|---|---|
| 1995 THEFT OVER $1000.00 | Dyer County, TN Docket No. C94234 |
| 1995 THEFT OVER $1000.00 | Dyer County, TN Docket No. C94234 |
| 1995 THEFT OVER $1000.00 | Gibson County, TN Docket No. 15068 |
| 1993 THEFT OVER $500.00 | Gibson County, TN Docket No. 14644 |
| 1993 THEFT OVER $1000.00 | Gibson County, TN Docket No. 14644 |
| 1993 THEFT OVER $500.00 | Gibson County, TN Docket No. 14669 |
| 1993 VBCL OVER $1000.00 | Gibson County, TN Docket No. 6170 |
| 1993 VBCL OVER $500.00 | Henderson County, TN Docket No. 93042 |
| 1993 VBCL OVER $500.00 | Madison County, TN Docket No. 93402 |
| 1993 VBCL OVER $500.00 | Madison County, TN Docket No. 93402 |
| 1993 VBCL OVER $1000.00 | Madison County, TN Docket No. 93403 |
| 1993 VBCL OVER $500.00 | Madison County, TN Docket No. 93403 |

The Defendant entered an open guilty plea to theft of property valued over $10,000, a Class C felony, on October 21, 2015. At the January 29, 2016, sentencing hearing, the prosecutor commenced by calling the court's attention to several mistakes on the notice of enhancement filed in 2011 by another prosecuting attorney. Among the errors noted were a 1993 conviction for violation of the bad check law that was a misdemeanor and could not be considered in establishing the Defendant's range, incorrect docket numbers on two convictions from 1993, and listing two Class E felonies that occurred within a twenty-four hour period separately for enhancement purposes. *See* T.C.A. § 40-35-106(b)(4) (noting that "convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions").

The prosecutor then stated that the Defendant was actually a Range III offender because he had six prior Class D felony convictions and five prior Class E felony convictions and because the six Class D felonies and four of the Class E felonies would count toward establishing range. She argued that, despite the fact that the notice asserted

the Defendant was a Range II offender, the Defendant should be sentenced as a Range III offender because the notice listed his numerous previous offenses and because this constituted an ambiguity into which the Defendant had a duty to inquire.

At prompting from the trial court asking if the Defendant objected to sentencing as a Range III offender based on lack of notice, defense counsel stated, "I guess I need to." The trial court offered the Defendant the opportunity for a continuance, but the Defendant chose to proceed with sentencing instead.

Mark Gallo testified that the victim of the theft was his father,[1] who was an antiques dealer until the time of his death in 2011. Mr. Gallo's father split his time between his business in Tennessee and an antiques dealership in Chicago, and he had help from a trusted worker who cared for the property and helped with deliveries and repairs. This trusted employee passed away, and Mr. Gallo's father hired the employee's wife, Shirley Kleva,[2] to come in to clean and to "keep an eye on the place." The place of business functioned both as storage and as an area to shop. The location had alarms and secured doors and frames and was approximately two blocks from the police station.

Mr. Gallo testified that he discovered the theft when he stopped by the business unannounced and immediately noticed many missing items. Ms. Kleva did not answer her telephone, but he was able to find her and speak with her in person. She denied any knowledge of missing items and stated she had not been in the store. Mr. Gallo asked his father if he knew about the missing items, and Mr. Gallo's father instructed him to look for particular items that had been exhibited at a recent show. Mr. Gallo's father then instructed him to go to the police. Mr. Gallo could not remain in town, so he loaded up what he could into his van and left.

Mr. Gallo testified that the police were able to recover some of the missing items. A photographic inventory of items that were missing, including items that had been recovered, was introduced into evidence. Mr. Gallo also compiled a spreadsheet which listed items that had been taken, indicating the ones that were recovered. Mr. Gallo testified that the value of the items in the spreadsheets was based off of certain appraisals that had been conducted in 1985 and 1986. He testified that the missing items were ones that his father had habitually taken to shows in Miami and that his father was

---

[1] Mr. Gallo testified that he had taken over his father's business after his father's death and that he began to work in the antiques business with his father in 1992, but he did not testify that he had an ownership interest in the business at the time of the theft.

[2] Ms. Kleva's last name is spelled several ways in the transcript; we use the spelling in a joint filing from the technical record which was submitted by the Defendant and Ms. Kleva.

consequently certain that "he hadn't touched" them. Mr. Gallo testified that the total value of the missing items on the spreadsheet was $45,642.

Defense counsel objected to the introduction of the spreadsheet, stating that she had not been made aware of the total restitution amount prior to the hearing. The prosecution stated that the appraisals had been a part of the discovery and that the spreadsheet was merely a way to "streamline[]" the information. The trial court expressed concern about the fact that defense counsel had apparently not been aware of the total amount of loss. The defense elected to move forward with sentencing.

Mr. Gallo also introduced a list of missing items that had not been part of the appraisals, and their photographs were also entered into evidence. Mr. Gallo estimated the value of a missing sculpture by Rembrandt Bugatti as $250,000 at the time of the theft, and he testified his estimate was based on auction records of similar items by the sculptor and on his expertise as an antiques dealer. The value of the other missing items in the list was $8,000, which Mr. Gallo estimated based on the purchase prices. He testified that his total losses were approximately $310,000. Mr. Gallo and his father had insurance on the property, but Mr. Gallo had so far not been able to recover any insurance payments because he was not able to open a claim due to a pending lawsuit against his father's estate.

On cross-examination, Mr. Gallo testified that the building was locked and had an alarm with a security code. He acknowledged that he did not know who removed the items from the building and that it could have been "anyone with a key and a code." He testified that he compiled the lists of missing items himself, that all of the items were items which his father had recently taken to Miami and which were stored in certain boxes, and that some of the items were recovered from the Defendant. He stated that it was not possible that the items had been sold by his father. He also testified that the "National Cash Register" which had been stolen was far too heavy for Ms. Kleva to have moved by herself.

The Defendant presented the testimony of Vicky Robinson, the Defendant's sister. She testified that the Defendant was good-hearted and that he would "own up to" his mistakes. She testified that while he had suffered from drug addiction, he had been "trying … to do right" and that she did not believe he would break into a building, steal, or willfully sell stolen goods. She acknowledged that he had prior convictions for theft and "bad checks" but stated that these were from when he had a gambling addiction around age eighteen. She stated that the Defendant provided for his ex-wife and their twenty-year-old autistic son.

- 4 -

Keith Cunningham testified that the Defendant worked for his company in the 1980s and again after he was incarcerated. He described the Defendant as "one of the best salesmen in the world." He testified that the Defendant was terrible at managing his own money but that he never suspected the Defendant of being dishonest and did not believe the Defendant would steal.

The Defendant testified that in April 2010, he was employed in caring for a family and would frequently sell items such as cars and trailers out of their yard. At one point, he was introduced during one of these sales to Ms. Kleva, who asked if he would help her sell some antiques. The Defendant told her that he did not know about antiques but agreed to check with his cousins in Savannah. Ms. Kleva began to bring items in plastic bags to the house where he was staying, and the Defendant attempted to sell them for her. He quit briefly when he had to have six bypass surgeries. The Defendant attempted to sell more items but felt he was expending more in gas than he was getting as remuneration, and he was arrested in February of 2011. He testified that he "basically" just sold items to an antiques dealership in Jackson and that he mainly sold glassware. When he was arrested, he told police that some of the pieces were in Dyersburg, where he was attempting to sell them to an antiques dealer and on the internet. He testified that he never saw the Bugatti sculpture and had always believed that Ms. Kleva owned the items. The Defendant claimed to have heard that Ms. Kleva was selling antiques "all over town" and that her husband had done the same. Ms. Kleva was also charged with an offense based on the theft but was deceased at the time of sentencing.

The Defendant testified that he mainly pled guilty because he was charged with a Class B felony and he wanted a reduced charge to have a chance at probation. The Defendant received disability payments and was willing to pay restitution. He testified that he was previously an alcoholic and that his prior convictions were related to alcohol abuse. He also testified he wanted to continue to help his severely autistic son and to continue to be a caretaker for the family which employed him.

The trial court sentenced the Defendant as a Range III offender. Considering the age of the Defendant's prior convictions, the trial court sentenced him to the minimum in the range of ten years' imprisonment. The trial court found that, given the extensive loss suffered by the victim, including the loss of pieces of art of sentimental value, probation was not appropriate, and the Defendant was ordered to serve his sentence in confinement.

## ANALYSIS

The Defendant contends that the notice of enhancement was not sufficient and that he should accordingly not have been sentenced as a Range III offender. Whether the notice was sufficient is a question of law which we review de novo. *See State v.*

*Livingston*, 197 S.W.3d 710, 712 (Tenn. 2006) (reviewing de novo the issue of whether a notice filed under one indictment was sufficient to support enhanced sentencing under a superseding indictment); *State v. Benham*, 113 S.W.3d 702, 704 (Tenn. 2003) (reviewing whether notice was adequate de novo and noting that "[c]onstruction of statutes and application of the law to the facts are questions of law").

A persistent offender is a defendant who has "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, where applicable." T.C.A § 40-35-107(a)(1). A multiple offender has at least two but not more than four felony convictions in the conviction class, a higher class, or the next two lower classes. T.C.A § 40-35-106(a)(1). Tennessee Code Annotated section 40-35-202(a) provides that if the prosecution seeks to sentence the defendant as a multiple, persistent, or career offender,

> the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea.

T.C.A. § 40-35-202(a). Likewise, Tennessee Rule of Criminal Procedure 12.3(a) requires the prosecution to file notice of an intention to seek enhanced punishment ten days before trial and provides that "[i]f the notice is untimely, the trial judge shall grant the defendant, on motion, a reasonable continuance of the trial." Tenn. R. Crim. P. 12.3(a).

The purpose of this statute is to provide fair notice to an accused "that he is exposed to other than standard sentencing." *State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990). Notice functions to assist the defendant in "evaluating the risks and charting a course of action before trial." *Id.* "It is intended to order plea-bargaining, to inform decisions to enter a guilty plea, and to aid to some extent trial strategy." *Id.*

When the notice is not adequate because it is not timely, "an accused may not rest on the State's error, but must claim needed time by seeking a continuance and show some prejudice from the late filing." *Id.* Likewise, when the notice is timely but not correct, "the inquiry should be whether the notice was materially misleading." *Id.* "[W]hen the State has substantially complied with Section 40-35-202(a), an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." *Id.* However, the State bears the burden of asserting the appropriate sentencing status, and where the notice is essentially empty, it is insufficient. *Id.* (concluding sentence was improperly enhanced when the notice did not include necessary

- 6 -

information, such as the details of the former judgment).  Notice which is completely absent or inadequate, unlike notice which is merely untimely or has some defect, requires resentencing.  *State v. Carter*, 121 S.W.3d 579, 585 (Tenn. 2003).  In addition, the "failure to file any notice of sentencing status is grounds for re-sentencing."  *Id.*

The statute requires only fair notice, not perfect notice.  *Livingston*, 197 S.W.3d at 713.  At a minimum, the State must provide: "(1) written notice, (2) clearly expressing the State's intention to seek sentencing outside of the standard offender range, (3) setting forth the nature of the prior felony conviction, the dates of the convictions, and the identity of the courts of the convictions."  *Id.* at 713-14 (footnote omitted).  In *State v. Livingston*, the Tennessee Supreme Court concluded that notice of intent to seek enhanced punishment under Class E felony evading arrest was sufficient to give "fair warning" that the State intended to seek enhanced punishment for Class D felony evading arrest in the superseding indictment.  *Id.* at 716 ("To hold otherwise would be to impose a hyper-technical procedural requirement that elevates form over substance."); *see also Carter*, 121 S.W.3d at 586 (concluding that notice from original indictment was adequate as to offense for which the defendant was re-indicted, but that there was no notice given regarding the two new offenses which the superseding indictment charged).

In *State v. Benham*, the State included in its discovery responses a printout of the defendant's criminal record and a response stating that the defendant "based on his overall record, is a career offender."  113 S.W.3d at 703.   The Tennessee Supreme Court concluded that "the State's casual allusion to the notice statute in its response to a Rule 16(a)(1)(B) request amounted to an 'empty notice.'"  *Id.* at 705.  The court in particular found that the printout of the defendant's record "contains the charges, the identity of the courts in which the convictions occurred, and the dates of disposition" but did not include "any indication of the nature of the prior felony convictions."  *Id.*  Accordingly, the court remanded for resentencing.  *Id.* at 706.

As in the case at bar, the prosecution in *State v. Taylor* listed the defendant's prior convictions on which it intended to rely for enhanced sentencing.  63 S.W.3d 400, 413 (Tenn. Crim. App. 2001).  However, the prosecution in *Taylor* did not state whether it would seek sentencing of the defendant as a multiple, persistent, or career offender.  *Id.* The court found that the list of prior convictions constituted substantial compliance and that the defendant was charged with inquiring into the ambiguous notice and demonstrating prejudice.  *Id.*  Other decisions of this court have upheld enhanced sentencing when the notice listed the defendant's prior convictions but did not specify the range which the prosecution sought to use in sentencing.  *See*, *e.g.*, *State v. Donald Peden*, No. M2015-01252-CCA-R3-CD, 2016 WL 5210765, at *16 (Tenn. Crim. App. Sept. 19, 2016), *perm. app. denied* (Tenn. Dec. 14, 2016) (concluding that notice which did not specify the range was valid and that the record demonstrated that the defendant

was aware he was to be sentenced as a career offender); *State v. James Hawkins*, No. W2012-00412-CCA-R3-DD, 2015 WL 5169157, at *31-32 (Tenn. Crim. App. Aug. 28, 2015) *no perm. app. filed* (concluding that defendant was required to investigate ambiguity in notice when the State asserted that it would seek sentencing as a persistent offender but the code provision cited to the statute regarding career offenders); *State v. Justin Hadley*, No. W2014-00985-CCA-R3-CD, 2015 WL 5001166, at *6 (Tenn. Crim. App. Aug. 21, 2015), *perm. app. denied* (Tenn. Dec. 11, 2015) (notice was adequate when it did not specify offender category but listed convictions and subsequently was supplemented with untimely notice stating that the defendant was a career offender); *State v. Norman Branch*, No. W2013-00964-CCA-R3-CD, 2014 WL 3744322, at *12 (Tenn. Crim. App. July 28, 2014) *perm. app. denied* (Tenn. Dec. 19, 2014) (concluding that the notice was adequate and there was no prejudice when the notice listed convictions relied upon but did not identify range); *State v. Randell Murphy*, No. W2011-00744-CCA-R3-CD, 2012 WL 1656735, at *10 (Tenn. Crim. App. May 9, 2012) (notice was "arguably inadequate" when it did not specify the range or include all of the convictions relied upon, but the defendant did not demonstrate prejudice because the trial court had explicitly informed him during plea hearing that he could be sentenced above Range II and he did not object to reliance on the unnoticed convictions).

In *State v. Roderick Williams*, as in *Taylor*, the State did not specify which range it sought to apply to the defendant, but it did file notice of six prior convictions, four of which could count toward establishing the defendant's range. No. W2015-00832-CCA-R3-CD, 2016 WL 7664769, at *4 (Tenn. Crim. App. May 5, 2016) *perm. app. denied* (Tenn. Sept. 23, 2016). Because there was an issue with the timeliness of the notice, the trial court offered a continuance and thoroughly discussed with the defendant prior to trial that he would be sentenced as a persistent or career offender, and the defendant rejected a plea offer and elected to continue to trial. *Id.* at *5-6. Evidence was introduced at sentencing that the defendant had twelve felony convictions. *Id.* at *7. This court concluded that the notice was not "empty" under *Adams*, but that it was "materially misleading." *Id.* at *10. The court nevertheless concluded that the record affirmatively showed that the defendant had actual notice regarding the fact that the State sought sentencing as a persistent offender because the notice on its face appeared to support sentencing as a persistent offender. *Id.* The court found no reasonable probability that the defendant would have changed his trial strategy had he been aware of the State's intention to seek sentencing as a persistent offender. *Id.* The court concluded that "the State's notice standing alone would cause a different result. However, the notice, along with the very clear admonishment by the trial court … rendered fair notice that he was exposing himself to [something] other than standard offender classification for sentencing." *Id.* We note that under *Adams*, it would appear that a notice that is fatally defective or not substantially compliant would lead to resentencing rather than an inquiry into prejudice. Regardless, unlike the defendant in *Roderick Williams*, the

Defendant here was provided with a relatively complete list of convictions that the State intended to use for enhancement. The issue is rather whether the caption informing him that he would be sentenced as a Range II offender essentially negated the notice that the list would otherwise have provided that he was to be sentenced in Range III.

We note that "[t]he Legislature has expressly placed the responsibility of notice upon the district attorney, *along with the discretion to seek enhanced sentencing*." *Adams*, 788 S.W.2d at 559 (emphasis added). The State is not required to seek enhanced punishment even if the defendant qualifies for such. "The district attorney has the discretion to seek enhanced sentencing, and it is the district attorney's responsibility to provide notice to the court and the defendant pursuant to statute." *Carter*, 121 S.W.3d at 584.

It is clear that the notice was not deficient in alerting the Defendant that he would be sentenced as a Range II, multiple offender due to any of the discrepancies raised at the hearing. *See Roderick Williams*, 2016 WL 7664769, at *9 (citing cases for the proposition that "minor factual inaccuracies" do not invalidate notice); *see also State v. Nichols*, 877 S.W.2d 722, 737 (Tenn. 1994) (notice with incorrect case number was not misleading); *State v. Tyrone Ralph Wright*, No. M2010-02096-CCA-R3-CD, 2012 WL 601332, at *17-18 (Tenn. Crim. App. Feb. 23, 2012) (several clerical errors, including failure to distinguish misdemeanors and felonies, incorrect conviction date, incorrect court, and omitted conviction did not render notice insufficient); *State v. Willie Lewis*, No. W2008-02636-CCA-R3-CD, 2010 WL 1267070, at *6 (Tenn. Crim. App. Mar. 31, 2010) (notice which listed incorrect convictions dates and omitted division of criminal court nevertheless alerted the Defendant to the intention to seek enhancement and allowed him "to plan case strategy, including determining whether or not the Defendant was actually convicted of the crimes listed in the notice"); *State v. Timmy Lee Hill*, No. M2005-02437-CCA-R3-CD, 2007 WL 1774275, at *12 (Tenn. Crim. App. June 20, 2007) (notice including wrong court name and case number substantially complied with statute).

The question we face is whether a notice that specifically limited itself to sentencing the Defendant as a multiple offender was sufficient to alert him that he might be sentenced as a persistent offender through the appending of a list of prior convictions. The court was faced with a similar situation in *State v. Anthony Hines*, No. 01C01-9406-CC-00189, 1995 WL 316304, at *1 (Tenn. Crim. App. May 25, 1995). There, the State filed notice, listing the offenses on which it would rely to enhance sentencing. *Id.* The notice also stated, however, that the defendant would be sentenced as a persistent rather than a career offender. *Id.* The convictions in the notice would have supported sentencing only as a persistent offender for the highest charged offense; however, because the defendant was convicted of a lower class of felony, his prior criminal history

was sufficient to support sentencing as a career offender. *Id.* at \*4. The court concluded that he had actual notice of the convictions which would be used to enhance his sentence, that he had not demonstrated prejudice in plea bargaining or trial preparation, and that he did not seek a continuance or otherwise object during sentencing. *Id.* at \*5.

Unlike *Anthony Hines,* we are not faced with a situation in which the offender categorization is affected by the class of offense of which the Defendant stands convicted. The Defendant was charged with a Class B felony and pled guilty to a Class C felony, but he had at least five prior Class D felony convictions. T.C.A. § 40-35-107(a)(1). Accordingly, *Anthony Hines*, while instructive, is not controlling.

We nevertheless conclude that based on the caselaw above, particularly, *Anthony Hines*, *Roderick Williams*, and *Taylor*, the State's act of listing the convictions on which it intended to rely created notice, albeit ambiguous notice, that the Defendant might be punished as a persistent offender. We conclude that an ambiguity existed despite the fact that the prosecution retains the discretion to seek enhanced sentencing. *Adams*, 788 S.W.2d at 559. By listing twelve convictions in the notice, the State created an ambiguity regarding whether it had merely used its discretion not to assert sentencing enhancement or whether the notice contained a typographical error. Because there was substantial compliance with the statute, the Defendant must show that he performed his duty to inquire into the ambiguity, and he must show prejudice. *Adams*, 788 S.W.2d at 559.

Our review is somewhat hampered by the absence of the transcript of the plea hearing.[3] It is the duty of the appellant to prepare a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). In the absence of a transcript, we presume that the trial court's judgments were correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). "[T]he appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). In this case, however, the trial court made no finding that the Defendant had any notice that he could be sentenced as a Range III offender. In fact, it is clear from the sentencing hearing transcript that the State first raised the recently discovered possibility of sentencing the Defendant as a Range III offender at the sentencing hearing and that the Defendant was not aware that the State sought to sentence him above Range II.

---

[3] After the State argued that the absence of the transcript would preclude review, the defense moved to supplement the transcript, and this motion was granted. The trial court clerk, however, submitted a letter stating that the transcript had never been filed with the clerk.

We are nevertheless constrained to conclude that the Defendant has not shown that he fulfilled his duty to inquire into the ambiguity, and we likewise conclude that he has not met the burden of demonstrating any prejudice. First, the record contains nothing showing that the Defendant sought to clarify his sentencing range prior to entering his guilty plea. Neither is there anything to show that his plea was otherwise dependent on the notice indicating he would be sentenced in Range II. When the State first raised the possibility of sentencing the Defendant as a persistent offender at the sentencing hearing, he did not seek to withdraw his guilty plea or otherwise object that he had relied on the ambiguous notice. The plea hearing, which might shed light on whether the Defendant was aware that he might be a persistent offender, is absent from the record. The Defendant does not contest that he does, in fact, qualify as a Range III offender. There is simply nothing in the record from which we could glean a finding of prejudice, and we accordingly affirm the judgment.

## CONCLUSION

Because the Defendant has not shown prejudice, we affirm the trial court's judgment.

_____
JOHN EVERETT WILLIAMS, JUDGE