IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 2, 2004 Session

## STATE OF TENNESSEE v. ROMELUS CARAWAY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-01611   Chris Craft, Judge**

_____

**No. W2004-00462-CCA-R3-CD  - Filed December 23, 2004**

_____

The Defendant, Romelus Caraway, was indicted for felony Escape.  A Shelby County Jury convicted the Defendant of the indicted offense, and the trial court sentenced the Defendant to six years, after it determined the Defendant was a career offender.  On appeal, the Defendant contends that the trial court erred when it denied him a new trial because: (1) the indictment against the Defendant was fatally defective and the trial court allowed the State to use this defective indictment to prove essential elements of the offense for which he was charged; and (2) the evidence is insufficient to sustain his conviction.  Finding no reversible error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Paul K. Guibao (on appeal) and Joseph S. Ozment (at trial), Memphis, Tennessee, for the appellant, Romelus Caraway.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

In January 2003, the Defendant was indicted for felony Escape.  The Defendant was convicted of this offense by a Shelby County Jury, and he was sentenced to six years, as a career offender.  The following evidence was presented at the Defendant's trial.

Phyllis Sheppard, the criminal courts coordinator and keeper of records for the ten divisions in Shelby County, testified that, on June 30, 2002, the Defendant was in the custody of the Shelby County Sheriff's Department for aggravated assault charges.  She said that aggravated assault has

different classes, but each class is a felony. She testified that the Defendant was placed in custody on May 29, 2002, after he was arrested by capias for failing to appear in court for aggravated assault charges on indictment numbers 01-04636, 01-04633, and 01-04635. She said that the "system" keeps track of people arrested by issuing a records and identification ("R and I") number, assigned by the Sheriff's Department. She testified that the R and I number is based upon fingerprints, so that even if a person is arrested several times, or uses a different name, the cases will be assigned by the R and I number of the person.

On cross-examination, Sheppard testified that a capias is a warrant that orders the Sheriff's Department to place a person in custody because that person has been summoned to court and did not appear, resulting in a bond forfeiture. She said that, besides the R and I number, a booking number is also assigned to each defendant and that number reflects the day a person is arrested. She testified that the initial booking number on the aggravated assault charge was 00156918, which was the booking number for indictment numbers 01-04636, 01-04633, and 01-04635. She said that all three aggravated assault indictments resulted in a trial with the jury returning a verdict of not guilty on January 17, 2003.

On re-direct examination, Sheppard testified that the Defendant would have received a new booking number when he was arrested for the second time on the aggravated assault charges. She said that when a capias is issued, the defendant does not have a choice as to whether or not he is going to be arrested and placed in custody, regardless of what the defendant believes the outcome will be at trial. She testified that the outcome of a trial has no relation to the validity of a person being taken into custody. She said that the Defendant's trial on January 17, 2003, resulted in a misdemeanor vandalism conviction.

Bettie Lee, a registered nurse at the Regional Medical Center ("Med"), testified that she was on duty in the detention ward on June 30, 2002. She said that the detention ward houses the ill inmates that are in custody. She testified that each room has a lock and the doors are kept locked while the prisoners are in the room. Lee explained that only law enforcement officers have access to the "buzzer" that unlocks the doors. She said that the windows in the rooms are guarded with "wires all around the window." Lee testified that, during her shift on June 30, 2002, one of the prisoners who was a patient in the Med, escaped. She said that this prisoner was in a single room that had only one bed. Further, because he was being treated for tuberculosis, he was in a negative pressure room, which is a special room for persons with airborne infections.

Lee testified that the inmate who escaped was Romelus Caraway, and she identified him as the Defendant in court. Lee said that an officer has to open the door for her to enter a room, but she saw the Defendant through his door's viewhole at approximately 8:50 p.m. when she began dispensing medication. She said that when she entered the Defendant's room, at approximately 9:50 p.m. to give him his medication, she discovered that the Defendant was gone. She testified that the windows in the Defendant's room were open and the bed was pulled against the window. Lee explained that all of the glass from the windows was broken and removed and there were sheets rolled up that looked "like a rope hanging out the window . . . near the ground."

On cross-examination, Lee testified that, on June 30, 2002, the Defendant had been in the Med for a few days, but she did not remember exactly how long. She said that she did not see the Defendant leave the room. She testified that the officer at the guard station could see her enter and exit each room. She said that she could not see the jail ward door from inside the room.

On re-direct examination, Lee testified that, at the time that the Defendant escaped, the prisoners in the Med were not handcuffed or shackled. She said that, since the incident, the prisoners are restrained.

Richard Blair, a deputy sheriff, testified that he was on duty at the Med on June 30, 2002, and assigned to watch over the inmates housed there. He said that the inmates at the Med are in the custody of the Shelby County Sheriff's Office and are not free to leave. He testified that the prisoners in the Med are in a secured room, and the officers give nurses or doctors access to the room. Blair testified that, on June 30, 2002, the Defendant escaped, and he identified the Defendant in the courtroom. He said that, after the Defendant had received treatment, he was to return to the jail. The Deputy said that, when he and the nurse were going into the Defendant's room, and the Deputy went to "buzz to let her in," the nurse said that the Defendant was gone. Deputy Blair testified that he went down the hall and saw that the window was open and that there were sheets and other materials hanging out the window. He said that, upon discovering that the Defendant was gone, he notified his field commander and called Med security.

On cross-examination, Deputy Blair testified that it is standard procedure to always have two guards present. He said that, according to procedure, one guard does not leave until the replacement guard arrives, but, on that evening, procedure was not followed because the other officer left around 9:00 p.m. The Deputy testified that the officers did not allow the inmates to have tape, extra gowns, or extra bed sheets in their rooms and each inmate usually had one or two sheets on their bed. Deputy Blair testified that extra linens and tape were kept at the nurse's station, to which he had access. He said that it is the officers' and nurses' responsibility to ensure that nothing extra is in the room when the nurse leaves. He testified that he has never helped a prisoner escape. On re-direct examination, Deputy Blair testified that the Defendant did not pay him to let him escape.

Christopher Vaden, an officer with the Memphis Police Department, testified that, on July 1, 2002, he was involved in the Defendant's arrest for escape. He said that he and other officers received a call to a Shelby County address about a person that had escaped from jail, and he went to that address. He testified that another officer saw the Defendant inside and yelled to him, which caused the Defendant to try to exit through the side door where Officer Vaden was located. Officer Vaden testified that the Defendant opened the side door, and saw him, and then went back into the house. The Officer said that the Defendant then proceeded to run out the front door, where another officer was located. He said that he and the other officer chased the Defendant on foot and, after they captured him, they took him to the Med.

The Defendant testified that he was in the prison ward at the Med on June 30, 2002. He said that he broke the window in his room and that Deputy Blair gave him the tape. He testified that he

paid Blair to help him escape, but that Blair told him to make it look like he escaped through the window. He said that Blair gave him "scrubs" and walked him to the elevator and, while on the elevator, he took off his gown and put on the scrubs and then walked out of the building.

On cross examination, the Defendant testified that he was in custody and being treated for tuberculosis when he left the Med. On re-direct examination, the Defendant testified that he was "released" by Deputy Blair. On re-cross examination, the Defendant testified that he ran from the police when they were trying to arrest him, after he "left" the Med.

## II. Analysis

On appeal, the Defendant contends that the trial court erred in three regards. First, he asserts that the indictment against the Defendant was defective because it did not state the specific charge of the underlying felony, which is necessary to prove the offense of escape. Second, he contends that the trial court improperly allowed the State to use unrelated criminal charges to prove the elements of escape. Finally, the Defendant asserts that the evidence is insufficient to sustain his conviction for escape.

## A. Indictment

The Defendant alleges that his indictment was defective because it failed to allege the specific charge necessary to establish lawful custody to prove the offense of escape. Specifically, the Defendant asserts that, although he was in lawful custody of Shelby County pending aggravated assault charges, the indictment was based upon charges of aggravated kidnapping and aggravated assault linked to a different booking number. As a result, the Defendant contends, he was not on notice of the specific charges used to establish lawful custody. Further, in a related issue, he asserts that the trial court erred in allowing the State to use criminal charges that were not related to the indictment to prove the essential elements of escape.

The Defendant's indictment reads:

> THE GRAND JURORS of the State of Tennessee, duly selected, empaneled, sworn and charged to inquire for the body of the county of Shelby, Tennessee, upon their oath present that:
> ROMELUS CARAWAY
> on June 20, 2003 in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly escape from the Shelby County Jail by leaving temporary custody at the Regional Medical Center located in Shelby County, Tennessee, having been lawfully held there awaiting trial for the felony charges of Aggravated Kidnapping and Aggravated Assault, in violation of T.C.A. 39-16-605, against the peace and dignity of the State of Tennessee.

The Defendant contends that this indictment was fatally defective because it was vague in stating

what specific felony charge for which he was being held, which the Defendant contends is necessary to prove the offense of felony Escape. Generally, defenses based upon a defective indictment must be presented prior to trial. Tenn. R. Crim. P. 12(b)(2). Rule 12(b)(2) provides as follows:

> (b) Pretrial Motions. – Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:
> (2) Defenses and objections based on defects in the indictment, presentment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings).

Accordingly, the Defendant has waived this issue. However, in the interest of justice, we will proceed to deal with this issue on the merits.

The Tennessee Supreme Court has held that, for constitutional purposes, "an indictment is valid if it provides sufficient information: (1) to enable the accused to know the accusation to which answer is required; (2) to furnish the court adequate basis for the entry of a proper judgment; and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). Further, the indictment must meet the statutory requirements of Tennessee Code Annotated section 40-13-102, which provides:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty, which will enable the court, on conviction, to pronounce the proper judgment; and in no case are such words as "force and arms" or "contrary to the form of the statute" necessary.

In Hill, our Supreme Court concluded that, although the scienter requirement was not stated in the indictment, the indictment was valid, based upon it: (1) satisfying the three aforementioned constitutional requirements; (2) complying with the notice requirements of Tennessee Code Annotated section 40-13-202; and (3) providing a basis for logically inferring the mental element of the crime charged. Id. at 726-27. The Hill Court stressed that indictments should be scrutinized from the vantage point of "common sense and right reason rather than from the narrow standpoint of . . . technicality or hair splitting fault finding." Id. at 728 (quoting United States v. Purvis, 580 F.2d 853, 857 (5th Cir.1978)). Since Hill, the Court has often repeated its intention to relax "common law pleading requirements and its reluctance to elevate form over substance when evaluating the sufficiency of indictments." See e.g., State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000). In Hammonds, the Court said, "Indeed, Hill and its progeny leave little doubt that indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." Id.; see State v. Sledge, 15

S.W.3d 93, 94 (Tenn. 2000); Crittenden v. State, 978 S.W.2d 929, 931 (Tenn.1998); Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998). The Tennessee Supreme Court has held that an indictment may refer to the statute that defines the offense and that indictment is sufficient and satisfies all constitutional and statutory requirements. See Sledge, 15 S.W.3d at 95; see also Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998).

In the case under submission, the indictment about which the Defendant complains is attached to the appellate record. After a thorough review of the indictment in this case, we find that it meets both the constitutional and statutory requirements. The Defendant is named as the accused, the date of the offense is given, and the actus reus and mens rea of the offense is stated. Further, the indictment afforded the Defendant clear, understandable notice that he was being charged with a violation of Tennessee Code Annotated 39-16-605, which proscribes Escape. The indictment tracks the escape statute and alleges that the Defendant knowingly escaped from custody. The indictment's failure to allege the correct booking number for the specific charge required to establish felony Escape does not make it defective. At the Defendant's trial for escape, the State "only had to prove that [the Defendant] escaped from lawful custody while being held for a felony. It was not necessary for the name of the felony to be alleged, instructed, or proven." State v. Culp, 891 S.W.2d 232, 236 (Tenn. Crim. App. 1994); see also State v. James, 81 S.W.3d 751, 760-61 (Tenn. 2002). Accordingly, the Defendant was provided adequate notice of the charge against him, escape while being held on a felony, and the trial court had an adequate basis for the entry of a proper judgment. Therefore, this issue is without merit.

Next, the Defendant contends that the trial court improperly allowed the State to use unrelated criminal charges to prove the essential elements of escape. Specifically, the Defendant asserts that the use of charges for aggravated assault[1] and aggravated kidnapping was erroneous since these charges were not pending. Sheppard, the keeper of the official court records, testified that the Defendant was arrested on May 29, 2002, after failing to appear for three indictments of aggravated assault. The record appears to support this testimony, and it appears that since only one aggravated assault charge and one kidnapping charge were dismissed prior to the Defendant's escape, there was at least one aggravated assault charge that remained. In the case under submission, the jury was instructed that in order to convict the Defendant of escape, the State must prove, beyond a reasonable doubt, that: (1) the Defendant escaped; (2) at the time of the escape the Defendant "was charged with aggravated assault, a felony"; (3) the escape was from a penal institution; and (4) that the Defendant acted "intentionally, knowingly or recklessly." Based on Sheppard's testimony, there were aggravated assault charges pending and, therefore, the use of a charge of aggravated assault in the jury instruction was correct.

Further, the citing of any specific felony was not actually needed to support a conviction for escape and, therefore, any citation of a specific felony was merely gratuitous. Even if the felony charge stated was the incorrect charge it does not render the indictment defective. "An indictment

---

[1]In his brief, the Defendant stated that aggravated robbery charges were used, however, it appears that the charges were actually for aggravated assault.

is not bad or fatal if it . . . contains surplus words. However, in rejecting the surplusage, the offense must be sufficiently charged." Culp, 891 S.W.2d at 236. After the removal of the specific offense of aggravated assault, the indictment would still read that the Defendant was being charged with escape while being held on felony charges and this would suffice in placing the Defendant on notice of the offense. It is not necessary for the State to prove the type of felony for which the Defendant was incarcerated and in custody; the State only needs to prove that the Defendant was in custody for a felony. Id. This issue is without merit.

## B. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Carter, 121 S.W.3d 579, 588 (Tenn. 2003); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant contends that the evidence presented at trial is insufficient to sustain his conviction for escape. Specifically, he asserts that the proof at trial does not match the indictment and the facts alleged therein. He contends that, because he was not in lawful custody for the charges considered during the arrest and for the subsequent indictment, and those charges were used to establish a necessary element of the offense, a guilty verdict was improper.

Escape, as stated by Tennessee Code Annotated section 39-16-605 (2003), makes it "unlawful for any person arrested for, charged with, or convicted of an offense to escape from a penal institution . . . ." Escape is defined as an "unauthorized departure from custody . . . ." Tenn. Code Ann. § 39-16-601(3)(2003). Custody, defined by Tennessee Code Annotated section 39-16-601(2) (2003), is defined as being "under arrest by a law enforcement officer or under restraint by a public servant pursuant to an order of a court . . . ." Penal institution "includes any institution or

facility used to house or detain a person: (A) Convicted of a crime . . . or (C) Who is in direct or indirect custody after a lawful arrest." Tenn. Code Ann. § 39-16-601(4) (2003).

After considering the evidence in the light most favorable to the State, we conclude that sufficient evidence exists in the record to support the Defendant's conviction. The evidence at trial, viewed in this light, showed that the Defendant was taken into custody on May 29, 2002, on at least three separate aggravated assault charges. On June 28, 2002, one count of aggravated assault and aggravated kidnapping were dismissed due to lack of prosecution. According to Sheppard, at least two aggravated assault charges against the Defendant remained and that would satisfy one of the necessary elements of the offense of felony Escape, that the Defendant was being held on felony charges. It is not necessary for the State to prove the charges the Defendant is being held on or to even state what the felony charges are. The evidence is, therefore, sufficient to prove that the Defendant escaped while in custody pending felony charges. This issue is without merit.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we AFFIRM the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE