IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 25, 2005 Session

## STATE OF TENNESSEE v. TROY ROBERT WHIPPLE

**Direct Appeal from the Circuit Court for Franklin County**
**No. 14776       J. Curtis Smith, Judge**

---

**No. M2004-03047-CCA-R3-CD - Filed March 3, 2006**

---

A Franklin County Jury found the Defendant, Troy Robert Whipple, guilty of one count of evading arrest while operating a motor vehicle, one count of reckless driving, one count of driving on a revoked license, and two counts of vandalism, and the trial court sentenced the Defendant to an effective sentence of four years. The Defendant now appeals, contending that: (1) the evidence presented at trial is insufficient to support his convictions; (2) the trial court committed plain error when it failed to instruct the jury that an unlawful arrest is a defense to a charge of evading arrest while operating a motor vehicle; (3) the trial court improperly sentenced him; and (4) the fines imposed upon him are unreasonable. After thoroughly reviewing the record and the applicable authorities, we affirm the Defendant's convictions and sentences for evading arrest while operating a motor vehicle, reckless driving, and driving on a revoked license. We reverse the Defendant's convictions for vandalism, and we remand the case for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part,**
**Reversed in Part and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court in which JAMES CURWOOD WITT, JR., J., JOINED. THOMAS T. WOODALL filed an opinion concurring in part and dissenting in part.

Francis W. Pryor, Jr., Jasper, Tennessee (on appeal) and David McGovern, Jasper, Tennessee (at trial), for the Appellant, Troy Robert Whipple.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; J. Michael Taylor, District Attorney General; William Copeland, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the Defendant's arrest for multiple offenses after being chased by police on September 4, 2001. The Defendant was indicted for evading arrest while operating a motor

vehicle, reckless driving, driving on a revoked license, and two counts of vandalism. At the Defendant's trial for these charges, the following evidence was presented: James Sherrill, an officer with the Dechard Police Department, testified that, on the day of the crime, he received a dispatch call reporting a fight involving the Defendant. He said that he saw the Defendant driving a four-by-four gray, "primered" pick-up truck, and he knew that the Defendant's license was revoked. By turning on his siren, Officer Sherrill attempted to get the Defendant to stop his car, but the Defendant did not stop. Officer Sherrill followed the Defendant, chasing him for thirty to sixty seconds. During the chase, the vehicles reached speeds of approximately 80 to 100 miles per hour, and Officer Sherrill was not able to stop the Defendant. He testified that the Defendant drove in a reckless manner on both sides of the road, "swerved toward a patrol car, swerved back to miss the patrol car, went off the roadway striking a fence, came back across the side of the roadway, [and] hit several mail boxes, beauty rims exploding from the truck." Officer Sherrill also testified that the Defendant drove further down the road and almost hit a black car, which had to swerve out of the roadway to avoid hitting the Defendant's truck. At that point, Officer Sherrill stopped pursuing the Defendant.

Officer Sherrill explained that his police car was equipped with a video camera that captured these events. The video was played for the jury, and Officer Sherrill explained that the video showed that the Defendant's truck came up a curve, drove straight toward a stationary police car, and then veered off to go around a curve but ran into a fence instead. The video also showed a black car veering off to the right as the Defendant's truck approached the car.

On cross-examination, Officer Sherrill testified that, before the chase, he had parked his vehicle, with the engine running, and the Defendant's truck passed his police car. Officer Sherrill said that, looking through his front windshield and through his window, he recognized the Defendant as the driver of the truck. He testified that he pulled his car out onto the road, turned on his blue lights, and pursued the Defendant. He said that he had radio communications with Officer Daniel while he pursued the Defendant and that the black car that the Defendant's truck almost hit turned onto another roadway and did not end up in a ditch. Officer Sherill testified that he interviewed the driver of the black car, but the driver was not present in the courtroom at trial. Officer Sherrill did not recall the exact type of car that swerved off onto another roadway and only remembered that the car was black. He testified that no one was injured during the chase. Officer Sherrill said that, in order to identify the Defendant as the driver of the gray truck, he ran a driver's license check, ran a check on the truck's tag, and observed the Defendant driving the vehicle.

Officer Jim Daniel, an officer with the Decherd Police Department, testified that he received a dispatch call notifying him that the Defendant was heading toward his city. As a result of that dispatch call, Officer Daniel and other officers prepared to stop the Defendant so that the Defendant did not come into their city at a high rate of speed. Officer Daniel said that the Defendant drove "head on" toward Officer Daniel's police car at a high rate of speed. He said that the Defendant swerved his truck toward Officer Daniel's police patrol car. Officer Daniel said that he was able to determine the Defendant's identity because he looked him "square in the eye" before the Defendant's truck passed his patrol car. Officer Daniel saw Officer Sherrill's vehicle with its blue lights activated behind the Defendant, and he told Officer Sherrill to end the pursuit because children were in the

roadway further down the road.

On cross-examination, Officer Daniel testified that, when he first saw the Defendant, he had almost come to a complete stop, and he was trying to situate his vehicle in a position that would force the Defendant to slow down. He said that he never drove his vehicle into the Defendant's lane of travel. Officer Daniel testified that he went into a ditch when the Defendant swerved his truck toward Officer Daniel's police car. The officer said that he knew children were farther down the road because he had passed by them earlier, but he did not actually observe the Defendant in close proximity to the children.

Billy Bolin testified that, on the day of the crimes, he returned home to find his fence torn down and pieces of the chain link fence all over his yard. He said that he used Rogers Fencing Company to repair his fence, and the work cost him "six hundred and some dollars." On cross-examination, he testified that he did not witness who ran into his fence, and all the information that he had regarding what happened to his fence came from third parties.

Iva Lou Bolin testified that, on the day of the crime, when she returned to her home, she found wire laying everywhere and her flowers all "plowed up." She stated that the repair work cost her $685.00. She said that she did not personally observe her property being damaged, and all information she had regarding the damage came from third parties.

The State then introduced an affidavit from Kenneth W. Birdwell, of the Tennessee Department of Safety, into evidence. The affidavit stated that the Defendant's driver's license was revoked on the day of the crimes.

The Defendant testified that he was not driving the gray truck that the police officers saw on the day of the crimes. He said that he had a shiny, gray truck, and his truck did not have an undercoating primer color. On cross-examination, the Defendant said that he did not know whether the color of his truck was the same color that the car factory had painted the truck. The Defendant testified that he had known Officer Daniel for "a pretty good while."

Based upon this evidence, the jury convicted the Defendant of one count of evading arrest while operating a motor vehicle, one count of reckless driving, one count of driving on a revoked license, and two counts of vandalism. The trial court sentenced the Defendant to an effective sentence of four years.

## II. Analysis

The Defendant now appeals, contending that: (1) the evidence presented at trial is insufficient to support his convictions; (2) the trial court committed plain error when it failed to instruct the jury that an unlawful arrest is a defense to a charge of evading arrest while operating a motor vehicle; (3) the trial court improperly sentenced him; and (4) the fines that the trial court imposed upon him are unreasonable.

## A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support any of his convictions. He was convicted of felony evading arrest while operating a motor vehicle, reckless driving, driving on a revoked license, and two counts of vandalism. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Carter, 121 S.W.3d 579, 588 (Tenn. 2003); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). This Court may not substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

## 1. Identity of the Perpetrator

The Defendant first contends that insufficient evidence exists to prove his identity as the perpetrator of the crimes charged against him and contends that he was not the driver who committed the crimes that the officers witnessed. The State contends that it presented sufficient evidence of identity to support the Defendant's convictions. We agree with the State.

The identity of the perpetrator is an essential element of any crime, and therefore must be proven by the State beyond a reasonable doubt. State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975). Issues of identity and credibility are classic jury questions. State v. Gregory Mullins, No. E2004-02314-CCA-R3-CD, 2005 WL 2045151, at *5 (Tenn. Crim. App., at Knoxville, Aug. 25, 2005), *no Tenn. R. App. P. 11 application filed*. Questions concerning the credibility of the witnesses are resolved by the trier of fact. Evans, 108 S.W.3d at 236. In support of the Defendant's convictions, the State presented the testimony of two police officers identifying the Defendant as the driver of the vehicle in question on the day of the crimes. The Defendant denied that the officers saw him commit these crimes; however, the jury accredited the testimony of the two police officers, and this Court does not second-guess the weight, value, or credibility afforded to the evidence by the jury.

We conclude that the State presented sufficient evidence of identity to support the Defendant's convictions. Therefore, the Defendant is not entitled to relief on this issue.

## 2. Felony Evading Arrest While Operating a Motor Vehicle

The Defendant submits that the evidence is insufficient to support his convictions for felony evading arrest while operating a motor vehicle. Specifically, he asserts that the State failed to prove his identity beyond a reasonable doubt and that the record provides no evidence that the crime committed constitutes a felony offense. The State contends that sufficient evidence was presented to support the jury's verdict. As stated above, we have concluded that sufficient evidence exists to support the Defendant's identity as the perpetrator of this crime; therefore we turn to address whether the evidence is sufficient to support the other elements of this offense.

In order to convict the Defendant of felony evading arrest while operating a motor vehicle, the State was required to prove beyond a reasonable doubt that the Defendant "while operating a motor vehicle on any street, road, alley or highway in this state, intentionally . . . [fled] or . . . [attempted] to elude any law enforcement officer, after . . . [receiving] any signal from such officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1) (2003). Class D felony evading arrest while operating a motor vehicle also requires that the State prove beyond a reasonable doubt that the Defendant's flight created a risk of death or injury to innocent bystanders, which is not required for Class E felony evading arrest. Tenn. Code Ann. § 39-16-603(b)(3).

We conclude that the evidence presented at trial, viewed in the light most favorable to the State, is sufficient to sustain the Defendant's conviction for Class D felony evading arrest while operating a motor vehicle. The record contains sufficient evidence to establish that the Defendant's behavior created a risk of death or injury to innocent bystanders or other third parties. The officers testified that the Defendant drove at speeds of approximately 80 to100 miles per hour, drove on both sides of the road, swerved his car toward a police car, and almost hit a black car that had to swerve off the road to avoid a collision with the vehicle being operated by the Defendant. A video displaying such reckless driving was played before the jury. Based on the testimony of the two police officers and the video tape, the evidence clearly establishes that the Defendant created a risk of death or injury to innocent bystanders or other third parties while evading arrest while operating a motor vehicle in violation of Tennessee Code Annotated section 39-16-603(b)(3). Therefore, we conclude that the evidence is sufficient to support the jury's verdict.

## 3. Reckless Driving

In order to convict the Defendant of reckless driving, the State was required to prove beyond a reasonable doubt that the Defendant drove a "vehicle in willful or wanton disregard for the safety of persons or property." Tenn. Code Ann. § 55-10-205 (2003). The Defendant again contends that the evidence is insufficient to prove his identity as the driver of the gray truck that fled from Officers Sherill and Daniel. As previously stated, the identity of the perpetrator is an essential element of any crime, see Thompson, 519 S.W.2d at 793, and therefore must be proven by the State beyond a

reasonable doubt. Issues of identity and credibility are classic jury questions. Gregory Mullins, 2005 WL 2045151, at *5. Again, what the Defendant in this case asks us to do is to reevaluate the credibility of the testimony, but questions concerning the credibility of the witnesses are resolved by the trier of fact. Evans, 108 S.W.3d at 236. As previously noted, the evidence presented at trial is sufficient to support the jury's finding that the Defendant was the driver of the gray truck, and thus was driving in willful or wanton disregard for the safely of persons or property as the testimony provided described.

### 3. Driving on a Revoked License

The Defendant concedes that "[t]here is no question . . . [his license] was in revoked status." However, he again contends that the evidence is insufficient to prove his identity as the driver of the gray truck that fled from the officers, and therefore he argues that the evidence is insufficient to support his conviction for driving on a revoked license. Tennessee Code section 55-12-131 (2003) provides that "[a]ny person whose license, or driving privilege as a nonresident, has been cancelled, suspended, or revoked as provided in this chapter, and who drives any motor vehicle upon the highways of the state while such license or privilege is cancelled, suspended, or revoked, commits a Class B misdemeanor." An affidavit stating that the Defendant had a revoked driver's license on the day of the crime was also introduced at trial. As discussed earlier, the State provided sufficient evidence to prove the identity of the Defendant as the perpetrator of the crimes charged against him. Accordingly, the evidence is sufficient to sustain the Defendant's conviction for driving on a revoked license, and the Defendant is not entitled to relief on this issue.

### 4. Vandalism

The Defendant contends that the evidence establishes that the damage to the fence resulted from reckless acts, not knowing acts. The State concedes the error and suggests that we reverse the Defendant's vandalism convictions. In order to convict the Defendant of vandalism, the State was required to prove beyond a reasonable doubt that the Defendant knowingly caused "damage or destruction of any real or personal property of another." Tenn. Code Ann. § 39-14-408 (2003). Tennessee Code Annotated section 39-11-106(a)(20) (2003) states:

> "Knowing" refers to a person who acts knowingly with respect to the conduct or circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

We conclude that the evidence is insufficient to show that the Defendant knowingly caused damage to anyone's property. There was no evidence submitted regarding the Defendant's mental state when he caused the property damage. The evidence presented at trial suggested no more than a reckless disregard for the property that was damaged. Therefore, we conclude that the convictions for vandalism should be reversed and the charges dismissed.

-6-

**B. Failure to Instruct Jury on Defense of Unlawful Arrest**

The Defendant asserts that the trial court committed plain error when it did not instruct the jury that an unlawful attempted arrest is a defense to a charge of evading arrest while operating a motor vehicle. He asserts that the trial court's failure to provide such instructions violates his 6th and 14th Amendment rights to due process and a jury trial and his Article I, sections 8 and 9 rights to "the law of the land" and a trial by jury. The Defendant further contends that the trial court should have provided a jury instruction explaining that the burden rested on the State to negate the defense of an unlawful arrest. The State asserts that a jury instruction on false arrest was neither requested or warranted under the facts of this case. We agree with the State.

The Defendant's trial counsel did not request that the jury be provided with an instruction regarding the defense of an unlawful arrest to a charge of evading arrest while operating a motor vehicle. Therefore, the issue can only be reviewed as an error of constitutional proportion or a plain error under Rule 52(b) of the Tennessee Rules of Criminal Procedure. Pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure, this Court has discretion to notice an error that has affected the substantial rights of an accused when necessary to do substantial justice. State v. Adkisson, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). Before an error may be recognized, it must be "plain" and must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." United States v. Olano, 507 U.S. 725, 732 (1993). Plain error is not merely error that is conspicuous, but especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings. See State v. Wooden, 683 S.W.2d 553, 559 (Tenn. Crim. App. 1983).

When considering whether plain error exists we consider the following factors: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice." State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (adopting the test articulated by the Court of Criminal Appeals in Adkisson, 899 S.W.2d at 641- 42). All five factors must be established by the record before an appellate court will recognize the existence of "plain error," and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. Id. In addition, the "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642.

After a thorough review of the record in this case, we conclude that the plain error doctrine cannot afford the Defendant relief because the Defendant failed to establish that a "clear and unequivocal rule of law has been breached." For a Defendant to rely upon the defense of unlawful arrest, the defense must be fairly raised by the proof at trial and submitted to the jury for its determination. Tenn. Code Ann. § 39-11-203(c) (2003). According to Tennessee Code Annotated section 39-11-203(c) (2003), "The issue of the existence of a defense is not submitted to the jury unless it is fairly raised by the proof." When providing jury instructions for evading arrest while

operating a motor vehicle, the Tennessee Pattern Jury Instructions advise that:

> It is a defense to the prosecution for this offense that the attempted arrest was unlawful. If evidence is introduced supporting this defense, the state has the burden of proving beyond a reasonable doubt that the attempted arrest was lawful. If you find that the attempted arrest was unlawful, or if you have a reasonable doubt thereof, you must find the defendant not guilty.

7 Tenn. Practice, Tenn. Pattern Jury Inst.- Criminal 27.05 (2003).

The record before us demonstrates that the Defendant did not rely upon this statutory defense at trial and presented no proof to support its existence. The record shows that Officer Sherrill's attempted arrest of the Defendant was lawful. Officer Sherrill testified that he had personal knowledge that the Defendant was driving on a revoked license when he attempted to arrest the Defendant, and the Defendant conceded that he drove on a revoked license. Because Officer Sherrill's attempted arrest of the Defendant was lawful, the trial court did not commit plain error by failing to instruct the jury regarding the unlawful arrest defense to a charge of evading arrest while operating a motor vehicle. The Defendant is not entitled to relief on this issue.

### C. Sentencing

The Defendant contends that the trial court sentenced him improperly and erred by imposing $7,500.00 in fines upon him. The State contends that the trial court appropriately sentenced him to a four-year prison term and properly imposed fines without objection from the Defendant at trial. We agree with the State.

At the Defendant's sentencing hearing, the following evidence was presented: Officer Cavanaugh of the Warren County Sheriff's Department testified about his attempt to arrest the Defendant on a prior occasion. He explained that, after a four hour "standoff," the police had to shoot the Defendant with a Tazer gun in order to arrest him. Officer Ramsey of the Warren County Sheriff's Department also testified about an attempt to arrest the Defendant on a different, prior occasion. He said he tried to pull the Defendant over while the Defendant was driving a car, but the Defendant sped away. He said the Defendant pulled into someone's driveway, and, when the police pulled in behind the Defendant's car, the Defendant drove through the back yard onto a roadway. Officer Ramsey testified that he eventually stopped pursuing the Defendant because he did not want to endanger innocent third parties.

The Defendant testified that his primary employment consisted of nursery work, he is usually employed when he is not in jail, he uses his money to support his two children and their mother, and he is buying a home. He said that he dropped out of school after completing the 7th grade and, when he was in school, he took special education classes.

Based on the evidence presented at trial, the presentence report, and the testimony provided

at the sentencing hearing, the trial court applied the following enhancement factors: factor (2), the defendant has a prior criminal history; factor (9), the defendant has a previous history of unwillingness to comply with sentences involving release into the community; factor (11) the defendant has no hesitation about committing a crime when the risk to human life was high; and factor (14)(C), the defendant committed the offenses while released on probation. See Tenn. Code Ann. § 40-35-114 (2), (9), (11), & (14)(C) (2003). The trial court noted that the Defendant had a work history but put little emphasis on that mitigating factor. The trial court sentenced the Defendant to four years for the Class D felony evading arrest while operating a motor vehicle conviction, two years for the Class E vandalism conviction, 11 months and 29 days for the Class A misdemeanor vandalism conviction, and six months for the Class B misdemeanor driving on a revoked license. The trial court also fined the Defendant $1000.00 for his vandalism charges, $500.00 for driving on a revoked license, and $5,000.00 for the Class D felony evading arrest while operating a motor vehicle. We conclude that the convictions for the Class E felony vandalism and Class A misdemeanor vandalism charges should be reversed. Therefore, the issue of the $1000.00 fine for the vandalism charges is moot, and his fines total $5,500.00.

The Defendant argues that the trial court improperly sentenced him in light of the United States Supreme Court decision in Blakely v. Washington, 542 U.S. 296 (2004). He further asserts that any enhancements, other than his prior convictions or his admissions of enhancing factors must be decided by the jury. The State asserts that the trial court properly imposed the maximum four year sentence for felony evading arrest while operating a motor vehicle. We agree with the State. Recently, our Supreme Court concluded that Blakely neither announces a new rule of constitutional law nor invalidates Tennessee's sentencing scheme, by which a trial court is permitted, rather than required, to enhance a sentence within the statutory range based on its finding of relevant enhancement factors. State v. Gomez, 163 S.W.3d 632 (Tenn. 2005). Accordingly, the Defendant is not entitled to relief on this issue.

### D. Excessive Fines

The Defendant contends that his fines are excessive. Specifically, the Defendant asserts that, as a 7th grade dropout with exposure to special education, he is unable to pay his fines. The State asserts that the fines imposed upon the Defendant are not unreasonable when considering the Defendant's testimony that he is regularly employed and is planning to buy a home. We agree with the State.

Our constitution prohibits fines over $50.00 unless approved by the jury. Tenn. Const. art. VI, § 14. A fine imposed by the trial court may not exceed that fixed by the jury. State v. Mahoney, 874 S.W.2d 627, 630 (Tenn. Crim. App. 1993). There are no exceptions to these guidelines unless the defendant waives the constitutional protections or his right to a trial by jury. State v. Martin, 940 S.W.2d 567 (Tenn. 1997); State v. Durso, 645 S.W.2d 753, 754 (Tenn. 1983). This Court has jurisdiction to review a fine because it is part of the sentence. See State v. Bryant, 805 S.W.2d 762, 763 (Tenn. 1991). Our review is de novo with a presumption that the determinations made by the trial court are correct. State v. Byrd, 861 S.W.2d 377 (Tenn. Crim. App. 1993).

In the case under submission, the jury imposed one $5,000.00 fine, which was within the permissible range for a Class D felony conviction, and one $500.00 fine, which is within the permissible range for a driving on a revoked license conviction.  See Tenn. Code Ann. § 40-35-111(b)(4), (e)(2) (2003) (providing that jury may assess a fine not exceeding $5,000.00 for a Class D felony conviction and not exceeding $500.00 for driving on a revoked license, a Class B misdemeanor).  Tennessee Code Annotated section 40-35-301(b) provides that "when imposing [a] sentence . . . the court shall impose a fine, if any, not to exceed the fine imposed by the jury."  Tenn. Code Ann. § 40-35-301(b) (2003).  The imposition of a fine, within the limits set by the jury, is to be based on the factors provided by the 1989 Sentencing Act; the trial court must consider the defendant's ability to pay the fine, the evidence from the trial, the sentencing hearing proof in regard to the defendant's ability to pay, and other factors of judgment involved in the setting of the total sentence.  Bryant, 805 S.W.2d at 766; see Tenn. Code Ann. § 40-35-207(7); see also State v. Taylor, 70 S.W.3d 717,723 (Tenn. 2002) (stating that a defendant's ability to pay "is not necessarily a controlling [factor]").

The trial court is "obligated to evaluate the fine . . . [and] may not simply impose the fine as fixed by the jury."  State v. Tidwell, No. W2004-01820-CCA-R3-CD, 2005 WL 1707979, at *8 (Tenn. Crim. App., at Nashville, July 31, 1997) *no Tenn. R. App. P. 11 application filed*.  In this case, the trial court did not establish a record to indicate that it considered the applicable factors in approving the fine.  Thus, this Court is not bound by the presumption of correctness on appeal.  Id. Nevertheless, the record does not establish that the $5,500.00 fine as recommended by the jury and accepted by the trial court judge is patently excessive.  The amount, on its face, is neither inappropriate nor unfair.  Accordingly, the judgment of the trial court is affirmed.

## III.  Conclusion

After thoroughly reviewing the record and the applicable authorities, we affirm the Defendant's convictions and sentence for Class D felony evading arrest while operating a motor vehicle, reckless driving, and driving on a revoked license.  Finding that there exists reversible error regarding the Defendant's vandalism convictions, we reverse those two convictions and dismiss the charges.  Therefore, the Defendant's fines are reduced by the $1000.00 fine for the vandalism charges and result in a total of $5,500.00.  We note that our reversal does not affect the Defendant's sentence because the trial court ordered that the sentences for all of his convictions run concurrently with his four-year sentence for the Class D felony evading arrest while operating a motor vehicle offense.

_____
ROBERT W. WEDEMEYER, JUDGE