# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 4, 2010

## STATE OF TENNESSEE v. HERMAN SHURN

### Direct Appeal from the Criminal Court for Shelby County
### No. 06-09026    W. Mark Ward, Judge

---

### No. W2009-00708-CCA-R3-CD  - Filed January 12, 2011

---

A Shelby County jury convicted the defendant, Herman Shurn, of aggravated robbery, a Class B felony, and criminally negligent homicide, a Class E felony.  The trial court sentenced him as a Range I, standard offender to twelve years for aggravated robbery and two years for criminally negligent homicide, to be served consecutively in the Tennessee Department of Correction.  On appeal, the defendant challenges (1) the trial court's amendment of the indictment over his objection; (2) the trial court's denial of his request to include facilitation of the charged offenses; (3) the sufficiency of the evidence to support his convictions; (4) the trial court's finding of enhancement factors in violation of *Blakely v. Washington*, 542 U.S. 296 (2004); and (5) the trial court's imposition of consecutive sentences.  Following our review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Vicki M. Carriker (on appeal), and Gregg Carman (at trial), Memphis, Tennessee, for the appellant, Herman Shurn.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tom Hoover and Abby Wallace, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Background

A Shelby County grand jury indicted the defendant, Herman Shurn, for first degree murder in the perpetration of a felony and especially aggravated robbery, a Class A felony. The grand jury also indicted Jerry Moore for the especially aggravated robbery. The state amended the indictment to aggravated robbery before trial. The parties tried the case before a jury from January 5 through January 9, 2009.

Rodney Taylor testified that on February 28, 2006, he was working as a clerk at his family's business, DJ's Grocery. His great-uncle, James Puckett, the homicide victim, was also working at the store that evening. Mr. Taylor testified that he was armed that day with a .380 caliber revolver pistol because he was afraid that someone would rob the store. At approximately 8:50 or 8:55 p.m., two men entered the store wearing ski masks, black hoodies, and blue jeans. One of the men "put a gun to [Mr. Taylor's] face and told [him] to give [him] the money." The second man began getting money out of the register. The gunman told Mr. Taylor to get on the ground, and he complied. The second man began going through Mr. Taylor's pockets. The victim grabbed the gunman from behind, and they "got into a tangle." Mr. Taylor testified that he was unable to see what happened at that point because he was still on the floor. The second man began running out of the store, and Mr. Taylor drew his pistol and began firing at him. He saw Kenneth Weightman, a customer of the store, struggling with the gunman, and he noticed that the victim was not moving. When the gunman began running away, Mr. Taylor fired at him. Mr. Taylor testified that he fired a total of six shots, and he did not know whether he hit either man. Mr. Taylor authenticated the store's surveillance video from that night, which showed the robbery, and the state played the video for the jury. Mr. Taylor identified the defendant as a frequent customer at DJ's Grocery.

On cross-examination, Mr. Taylor agreed that the victim "had some kind of knife or a blade in his hand" when he grabbed the gunman.

Kenneth Weightman testified that he shopped at DJ's Grocery nearly every day and lived in the neighborhood. On February 28, 2006, he had just left the store and was walking home when he saw two men walk around the store and then go inside. He became suspicious and returned to the store. When he entered the store, he saw one of the men with Mr. Taylor and the other "having some words" with the victim. He heard a gunshot and saw the victim fall to the floor. Mr. Weightman began "tussling" with the man over the gun. Mr. Weightman said that the gunman was trying to shoot him, and he was trying to squeeze the trigger and "get all the bullets out of [the gunman's] gun." When the gun was empty, Mr. Weightman hit the gunman's hand, causing him to drop the gun. The gunman then ran away. Mr. Weightman said that he would recognize the gunman if he saw him again. He was unable to identify the man from photographs that the police showed him.

Memphis Police Officer Sam Blue testified that he and Officer Pounds processed the scene at DJ's Grocery. Officer Blue said that he drew a diagram of the scene, noting the locations of the victim's body, a weapon, a shell casing, a pocket knife, and several bloody footprints and the distance between each.

Memphis Police Officer Allen J. Pounds testified that he photographed the scene at DJ's Grocery. He also collected the evidence, including a cell phone located under the victim's body.

Memphis Police Sergeant Fred Adams testified that he was working in felony response on February 28, 2006. He said that his lieutenant sent him to Methodist Central Hospital to speak with two shooting victims. When he arrived, the hospital staff had admitted the victims and were treating them. Sergeant Adams learned that the victims were the defendant and Jerry Moore. The men told him that they were shot during an argument with a person they had played basketball with at the Lester Community Center. Before Sergeant Adams left the hospital, he received information that the men were suspects in the shooting at DJ's Grocery. Sergeant Adams said that a crime scene officer collected the men's clothing as evidence.

Memphis Police Officer Marcus Berryman testified that on February 28, 2006, he responded to Methodist Central Hospital at the request of the felony response unit to collect evidence from two shooting victims, whom he identified as the defendant and Jerry Moore. While he was at the hospital, the felony response investigators determined that the men were suspects in another crime. Officer Berryman photographed the suspects, performed gunshot residue tests on them, and collected their clothing.

Sergeant William D. Merritt testified that he was involved in the investigation of the homicide at DJ's Grocery. He said that in the course of the investigation, he went to the basketball court at Lester Community Center where the defendant and Jerry Moore said that they were shot. He did not find any evidence indicating that a shooting took place there. Sergeant Merritt executed a search warrant at the defendant and Mr. Moore's respective residences. At the defendant's residence, he located a pair of blue jeans that appeared to have a bullet hole and a bloodstain, a Reebok tennis shoe with bloodstains on the side and bottom, and a notebook with the phrase "[g]et money" written on the back. He also found a green surgical mask outside of the residence. Sergeant Merritt further testified that he took buccal swabs from the defendant and Mr. Moore.

Memphis Police Officer Newton Morgan, a crime scene investigator, testified that he collected blood samples from stains in front and inside of DJ's Grocery. He also collected two bullet fragments, a .9 millimeter casing, and a green jacket.

April Collins testified that she had been in a relationship with the defendant, whom she knew as Dutch, for approximately one and a half months before the robbery at DJ's Grocery. She said that she bought a pair of Reebok tennis shoes and a black t-shirt with a snowman on it for the defendant. She identified the Reebok shoes previously admitted as evidence as the shoes she had purchased. Ms. Collins said that she saw the defendant wearing the shoes on February 28, 2006. She testified that the defendant called her some time after 9:00 p.m. to ask her for a ride. She went to his mother's house to pick him up. Ms. Collins said that the defendant and Jerry Moore, whom she knew as "Spud", were in the living room. Mr. Moore was bleeding and had a shirt wrapped around his left arm. They told her that a man with whom they played basketball shot them. The defendant told her that he had been shot in the leg, and he asked her to take them to the hospital, which she did.

Jerry Moore testified that he was incarcerated as a charge partner with the defendant. He said that he met the defendant through a mutual friend several weeks before February 28, 2006. On that day, he picked the defendant up at some point in the evening and went to a laundromat. While they were talking in Mr. Moore's car, the defendant told him that he needed money. The defendant suggested that they rob DJ's Grocery. Later in the evening, Mr. Moore dropped his laundry off at his parents' house and then went to the defendant's house, which was across the street. The defendant gave him a surgical mask and a sweatshirt to wear during the robbery. Mr. Moore testified that the defendant had a gun and a ski mask. They walked from the defendant's house to DJ's Grocery and went behind the store to put on the masks. Mr. Moore told the defendant that he did not want to continue with the robbery, but the defendant threatened him with the gun. He followed the defendant into the store, and he went behind the counter to get the money while the defendant was pointing his gun at the clerk. The defendant had the clerk lay on the floor, and Mr. Moore searched him. He took a phone from the clerk. Mr. Moore testified that he heard a rack fall over, so he looked up from searching the clerk and saw two men on top of the defendant. Mr. Moore ran out of the store, but the clerk fired two shots at him. One bullet went across his chin and into his shoulder. He heard more gunshots as he ran across the parking lot on his way to the defendant's house. The defendant arrived at his house one or two minutes after Mr. Moore. The defendant called Ms. Collins to take them to the hospital. Mr. Moore said that it was his idea, not the defendant's, to tell her the story about being shot on the basketball court.

On cross-examination, Mr. Moore denied that he suggested to the defendant that they rob a bank. He further denied that the defendant said he did not want to be involved if there was any violence. Mr. Moore said that he did not stop at an apartment between the laundromat and the defendant's house to retrieve a gun. He agreed that the state dropped the first degree murder charge against him in exchange for his testimony.

Dr. Karen Elizabeth Chancellor, the Shelby County Medical Examiner, testified that the cause of the victim's death was multiple gunshot wounds and the manner of death was homicide. Dr. Chancellor recovered three bullets from the victim's body.

Tennessee Bureau of Investigation Special Agent Donna Nelson testified that she created DNA profiles from standards taken from the victim, the defendant, and Jerry Moore, which she used to compare to DNA found on evidence submitted to her by investigators. She found a partial DNA match to the defendant on a surgical mask and testified that the probability of the DNA on the mask belonging to another individual exceeded the world's population. Agent Nelson testified that blood found on a jacket matched the victim's DNA. She found blood from the defendant and the victim on a pair of blue jeans. She found Mr. Moore's blood on a gray t-shirt. Agent Nelson found the victim's blood on the defendant's left shoe and the defendant's blood on the defendant's right shoe. Agent Nelson found the victim's blood on a second pair of blue jeans and a sock. She analyzed a pair of black shoes and found a mixture of the defendant's and the victim's blood on the right shoe and the victim's blood on the left shoe.

Tennessee Bureau of Investigation Special Agent Shelly Betts testified that she received a Llama 9 millimeter pistol, a .38 caliber Special revolver, six fired .38 Special cartridge cases, one fired 9 millimeter cartridge case, one copper jacketed bullet, and one bullet lead core from investigators in this case. She test fired both pistols, and compared the test bullets and cartridge cases to the evidence received. Agent Betts testified that the copper jacketed bullet and the six .38 Special cartridge cases matched the .38 caliber Special revolver. The lead core did not have any markings of comparative value. The 9 millimeter cartridge case matched the Llama 9 millimeter pistol. Agent Betts further testified that bullet fragments recovered during the autopsy matched the Llama 9 millimeter pistol.

Sergeant Merritt testified in the defendant's case-in-chief. He said that he interviewed Jerry Moore, who told him that he was shot in the course of an altercation on a basketball court. After Sergeant Merritt told him that they had video of the robbery at DJ's Grocery, Mr. Moore told him that he was only a lookout for the robbery. Mr. Moore also told him that the defendant pointed the gun at him while inside the store. Sergeant Merritt said that his investigation of the basketball court and the surveillance video showed that Mr. Moore's statements were inaccurate.

The defendant testified that on February 28, 2006, he rode with Jerry Moore to a laundromat. On the way, Mr. Moore told him that he had recently gotten out of jail and needed money. After retrieving his clothes from the laundromat, Mr. Moore suggested that they rob a bank, but the defendant did not want to participate. The defendant said that Mr. Moore suggested that they rob a store instead, and the defendant agreed to go with him as

-5-

long as there was no violence. Mr. Moore stopped at an apartment building on Belvedere Street and went inside. He returned with a pistol wrapped in a sheet. They dropped Mr. Moore's clothes off at his house and went to the defendant's house to plan the robbery. The defendant said that Mr. Moore did all of the planning and told him to point the gun at the clerk while he took the money from the register. When they got to the store, the defendant said that they were following Mr. Moore's plan until someone grabbed him from behind. He said that the person who grabbed him from behind had a knife, and another person came in and grabbed him, also. The defendant said that the three of them wrestled until they were on the floor, and he heard the gun go off. He said that Mr. Weightman had his hand on the gun and pulled the trigger. The defendant said that he was not trying to shoot anyone but was just trying to get away. After Mr. Weightman knocked the gun out of his hand, he tried to get up, but the clerk began firing at him. When the clerk ran out of bullets, the defendant ran out of the store. He met Mr. Moore behind Mr. Moore's house. They went to the defendant's house, and April Collins took them to the hospital. The defendant said that Mr. Moore told Ms. Collins the story about being shot on the basketball court. The defendant said that he repeated that story to the police at the hospital. The defendant testified that the victim would not have died if Mr. Weightman had not pulled the trigger and if he had not robbed the store.

Following the close of proof and deliberations, the jury convicted the defendant of the lesser-included offense of criminally negligent homicide, a Class E felony, and aggravated robbery, a Class B felony. The trial court sentenced him as a Range I, standard offender to twelve years for aggravated robbery and two years for criminally negligent homicide, to be served consecutively in the Tennessee Department of Correction.

**Analysis**

On appeal, the defendant challenges (1) the trial court's amendment of the indictment over his objection; (2) the trial court's denial of his request to include facilitation of the charged offenses; (3) the sufficiency of the evidence to support his convictions; (4) the trial court's finding of enhancement factors in violation of *Blakely v. Washington*, 542 U.S. 296 (2004); and (5) the trial court's imposition of consecutive sentences.

I. Amendment of the Indictment

The defendant contends that the trial court erred by allowing the state to amend the indictment, over his objection, from especially aggravated robbery to aggravated robbery. He argues that aggravated robbery was a different charge for which he did not have notice and did not have time to prepare a defense. The state responds that the trial court merely struck surplus language from the indictment, and if there was error, it was harmless because the defendant was left in the same position that he was in before the amendment.

An indictment must "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended . . . ." Tenn. Code Ann. § 40-13-202. To satisfy our constitutional notice requirements, an indictment must provide notice of the offense charged, an adequate basis for the entry of a proper judgment, and suitable protection against double jeopardy. *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). An indictment need not conform to strict pleading requirements. *Id*. Tennessee Rule of Criminal Procedure 7 provides that "[w]ithout the defendant's consent and before jeopardy attaches, the court may permit such an amendment [of an indictment, presentment, or information] if no additional or different offense is charged and no substantial right of the defendant is prejudiced." Tenn. R. Crim. P. 7(b)(2). The decision to grant or deny a motion to amend an indictment rests within the sound discretion of the trial court, and this court will not alter that decision absent an abuse of discretion. *See State v. Kennedy*, 10 S.W.3d 280, 283 (Tenn. Crim. App. 1999).

Before the amendment, count two of the indictment in this case read, in pertinent part,

[The defendant] on February 28, 2006 in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully, knowingly and violently, by use of a deadly weapon, obtain from the person of RODNEY TAYLOR a sum of Money, of Value, proper goods and chattels of RODNEY TAYLOR and caused serious bodily injury to JAMES PUCKETT, in violation of T.C.A. 39-13-403, against the peace and dignity of the State of Tennessee.

Prior to jury selection, the state brought to the trial court's attention that it intended to argue that the offense met the elements of especially aggravated robbery when the victims of the robbery and the serious bodily injury were different people. The defendant responded that the indictment was invalid as improperly charging especially aggravated robbery. The defendant argued that especially aggravated robbery was a victim-specific crime, and the state could not establish the elements by alleging two victims. Over the defendant's objection, the trial court allowed the state to amend the indictment to charge aggravated robbery. The trial court struck the phrase "and caused serious bodily injury to JAMES PUCKETT" and changed the statute to Tennessee Code Annotated section 39-13-402. In allowing the amendment, the trial court noted that the unamended indictment contained all of the elements of aggravated robbery and that jeopardy had not yet attached.

Indictments comprehend all lesser-included offenses of the charged offense. *See* Tenn. R. Crim. P. 31(d); *see generally State v. Burns*, 6 S.W.3d 453, 463-69 (Tenn. 1999) (discussing the development of the law related to lesser-included offenses). Aggravated robbery is a lesser-included offense of especially aggravated robbery. *State v. Locke*, 90 S.W.3d 663, 673-74 (Tenn. 2002). Because the unamended indictment for especially

aggravated robbery included the lesser offense of aggravated robbery, we conclude that the amended indictment charging aggravated robbery did not charge an additional or different offense. *See Gov't of the Virgin Islands v. Bedford*, 671 F.2d 758, 765 (3rd Cir. 1982) ("Because a lesser included offense is, by definition, composed exclusively of some, but not all, of the elements of the offense charged, it would never constitute a 'different' offense, and seldom an 'additional' offense with the meaning of [Federal Rule of Criminal Procedure 7].")

Furthermore, we conclude that the defendant did not suffer prejudice to a substantial right by not having sufficient notice to prepare a defense because the amendment did not change the fact that he was defending against the state's charge that he robbed Mr. Taylor and was responsible for Mr. Puckett's death, which was accounted for by the felony murder count of the indictment. In fact, the first count of the indictment alleged that the defendant killed Mr. Puckett in the perpetration of an aggravated robbery rather than an especially aggravated robbery. Both counts of the indictment gave the defendant notice of the facts constituting the offense and the victims involved, and the first count included the statute referencing aggravated robbery while the unamended second count included aggravated robbery as a lesser-included offense. Taken as a whole, the indictment was sufficient to place the defendant on notice of the offense with which he was charged. *See State v. Carter*, 121 S.W.3d 579, 588 (Tenn. 2003). Therefore, we conclude that the amendment to the indictment did not charge an additional or different offense and did not prejudice a substantial right of the defendant. The trial court did not abuse its discretion by allowing the amendment, and the defendant is without relief as to this issue.

## II. Jury Instructions

The defendant contends that the trial court erred by denying his request for the jury charge to include the lesser-included offense of facilitation for the charged offenses and facilitation of each of the lesser-included offenses of the charged offenses. The state responds that the defendant waived the issue by not submitting the request in writing. We agree with the state.

In this case, the defendant failed to make a written request for this jury instruction, but he did raise it in his motion for new trial. The trial court denied the motion for new trial, ruling that it properly charged the jury. However, failure to instruct on a lesser included offense was not a proper issue for a motion for new trial due to the lack of a written request, nor is it a proper issue for appeal. "Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal." Tenn. Code Ann. § 40-18-110(c). The Tennessee Supreme Court has held that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary

appellate review and cannot be cited as error in a motion for new trial or on appeal." *State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006).

However, our supreme court also made clear that when a defendant waives a jury instruction for failure to request it in writing, an appellate court may still review the issue for plain error. *Id.* at 230. An error which has affected the substantial right of a defendant may be noticed at any time in the discretion of the appellate court where necessary to do substantial justice. *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). "Plain error" or "fundamental error" is recognized under Tenn. R. App. P. 36(b). *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). Some errors are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

There are five factors which must be present for a court to determine "plain error" exists:

> (a)  the record must clearly establish what occurred in the trial court;
> (b)  a clear and unequivocal rule of law must have been breached;
> (c)  a substantial right of the accused must have been adversely affected;
> (d)  the accused did not waive the issue for tactical reasons; and
> (e)  consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (citing *Adkisson*, 899 S.W.2d at 641-42). Complete consideration of all five factors is unnecessary if at least one is absent. *Id*. at 283. Furthermore, the plain error must be such that it probably changed the outcome of the trial. *Adkisson*, 899 S.W.2d at 642.

The record clearly established that the defendant orally requested instructions on facilitation of a felony but did not submit the instructions in writing. Furthermore, the record indicates that failure to submit a written request was an oversight by counsel and not a tactical decision. Therefore, there is no issue regarding the record or a waiver for tactical reasons.

However, the defendant has failed to establish that a clear and unequivocal rule of law was breached. The trial court instructed the jury on the theory of criminal responsibility. A person is criminally responsible as a party to an offense "if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401(a). The trial court charged the jury that a person is criminally responsible for an offense committed by the conduct of another if, "[a]cting with intent to promote or assist in the commission of the offense, or to benefit

in the proceeds or results of the offense, the person solicits, aids, or attempts to aid another person to commit the offense[.]" *Id.* § 39-11-402(2). Facilitation, however, is established by proof that "knowing that another intends to commit a specific felony, but without the intent for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." *Id.* § 39-11-403. While "virtually every time one is charged by way of criminal responsibility for the conduct of another, facilitation of the felony would be a lesser-included offense[,]" *State v. Fowler*, 23 S.W.3d 285, 288 (Tenn. 2000), the supreme court has recognized that a lesser-included offense instruction is not required when "no reasonable jury could have concluded from the evidence presented that the defendant had the knowledge required for facilitation but lacked the intent required for criminal responsibility." *State v. Robinson*, 146 S.W.3d 469, 488 (Tenn. 2004).

The trial court concluded that there was no evidence in this case on which reasonable minds could differ that the defendant lacked the intent required for criminal responsibility. He admitted that he intended to rob DJ's Grocery and that he was armed. He further admitted that he needed the proceeds from the robbery. Therefore, because the defendant admitted the intent required for criminal responsibility, no reasonable jury could have concluded that he had the knowledge required for facilitation while lacking the intent required for criminal responsibility. We conclude that it was not plain error for the trial court not to instruct the jury regarding facilitation.

### III. Sufficiency of the Evidence

The defendant argues that the evidence was insufficient to sustain his convictions for criminally negligent homicide and aggravated robbery. Specifically, he contends that he did not intend to harm anyone and was not responsible for planning the robbery.

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558; *Tuggle*, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value

to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002); *Bland*, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *See State v. Elkins*, 102 S.W.3d 581, 582 (Tenn. 2003); *Reid*, 91 S.W.3d at 277.

To sustain the defendant's conviction for aggravated robbery, the state was required to prove that the defendant committed an intentional or knowing theft of property from the person of another using violence or fear and that the theft was accomplished with a deadly weapon or an article used to lead a victim to reasonably believe it to be a deadly weapon. *See* Tenn. Code Ann. §§ 39-13-401(a), -402(a).

Criminally negligent homicide is defined as "[c]riminally negligent conduct that results in death." Tenn. Code Ann. § 39-13-212(a). A person commits criminally negligent homicide when his conduct or the result of that conduct causes the death of another person, and by his conduct it is evident that he failed to perceive a substantial and unjustifiable risk that a result would occur (namely, death). "The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." Tenn. Code. Ann. §§ 39-11-106(a)(4); -302(d).

Viewed in the light most favorable to the state, the evidence at trial showed that the defendant, armed with a loaded .9 millimeter pistol, entered DJ's Grocery, pointed the pistol at the store clerk, and ordered the clerk to lie on the floor while his accomplice attempted to gather the money from the register. A second store employee, the victim in this case, grabbed the defendant, and the victim and a store customer wrestled with the defendant. In the course of the struggle, the gun discharged, and three bullets struck the victim, causing his death. The defendant admitted that he went into DJ's Grocery with the intent to rob the store and that he was armed. The defendant's initiation of a robbery with a loaded weapon created a substantial and unjustifiable risk that the weapon would discharge, whether intentionally or negligently, and cause the death of another person, which is what occurred here. We conclude that the evidence was sufficient for any rational trier of fact to find the defendant guilty of criminally negligent homicide and aggravated robbery.

## IV. Sentencing

The defendant contends that the trial court erred in sentencing by (a) enhancing his sentence in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), and (b) imposing consecutive sentences. The state responds that the trial court made appropriate findings regarding enhancement factors and consecutive sentencing.

## A. Standard of Review

An appellate court's review of a challenged sentence is *de novo* on the record with a presumption the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The Sentencing Commission Comments to this section of the statute indicate that the defendant bears the burden of establishing that the sentence is improper. When the trial court follows the statutory sentencing procedure and gives due consideration to the factors and principles relevant to sentencing, this court may not disturb the sentence. *See State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008).

## B. Enhancement Factors

In this case, the defendant was subject, as a Range I, standard offender, to a sentence of eight to twelve years for aggravated robbery, a Class B felony, and one to two years for criminally negligent homicide, a Class E felony. *See* Tenn. Code Ann. § 40-35-112(a). The trial court found that three enhancement factors from Tennessee Code Annotated section 40-35-114 applied to both offenses:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

(2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;

. . . .

(13) At the time the felony was committed . . . the defendant [was] . . . released on parole.

Tenn. Code Ann. § 40-35-114(1), (2), (13)(B). Additionally, the court applied enhancement factor (9) - "[T]he defendant . . . employed a firearm . . . during the commission of the offense" - to the defendant's sentence for criminally negligent homicide, and it applied enhancement factor (10) - "[T]he defendant had no hesitation about committing a crime when the risk to human life was high" - to his sentence for aggravated robbery.[1] The court sentenced the defendant to twelve years for aggravated robbery and two years for criminally

---

[1] Although a high risk to human life is inherent in the offense of aggravated robbery, our supreme court has concluded that the trial court may nonetheless enhance a sentence based upon factor (10) when individuals other than the victim may have been harmed by the commission of the offense. *Imfield*, 70 S.W.3d 698, 707 (Tenn. 2002); *see also State v. Tyree*, M200602173CCAR3CD, 2007 WL 2295611, *8 (Tenn. Crim. App., at Nashville, Aug. 10, 2007).

negligent homicide. The defendant contends that the trial court erred by finding enhancement factors that were not admitted by the defendant or found by the jury.

In *Blakely v. Washington*, the United States Supreme Court held that the Sixth Amendment right to a jury trial requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The court emphasized that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* at 303-04. The court further noted that the Sixth Amendment right to a jury trial is "no mere procedural formality, but a fundamental reservation of power in our constitutional structure." *Id.* at 305-06.

Thereafter, in *Cunningham v. California*, 549 U.S. 270 (2007), the United States Supreme Court extended the *Blakely* analysis to California's determinate sentencing scheme. In doing so, the court noted:

> We cautioned in *Blakely*, however, that broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of our decisions. If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.

*Cunningham*, 549 U.S. at 290 (citing *Blakely*, 542 U.S. at 305 and n. 8)

"In order to avoid the constitutional violation arising from a trial court increasing a presumptive sentence on the basis of judicially-determined enhancement factors," the Tennessee General Assembly amended Tennessee Code Annotated sections 40-35-102, -210, and -401, effective June 7, 2005, to reflect the advisory nature of enhancement factors. *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). The amendment, among other things, removed the presumptive sentence language from our Sentencing Act and mandated only that the trial "court shall impose a sentence within the range of punishment . . . ." *Compare* Tenn. Code Ann. § 40-35-210(c) (Supp. 2005) *with* Tenn. Code Ann. § 40-35-210(c) (2003). The General Assembly also provided that this amendment would apply to defendants who committed a criminal offense on or after June 7, 2005. *See* 2005 Tenn. Pub. Act ch. 353, § 18.

The defendant in this case committed the offense after the effective date of the 2005 amendments to the Sentencing Act. Therefore, his contention that the trial court erred by applying sentencing factors that a jury had not found beyond a reasonable doubt or that the defendant had not admitted is without merit because the General Assembly amended the Sentencing Act, rendering the enhancement factors advisory, in order to avoid a constitutional violation under *Blakely*. As the record supports the enhancement factors applied by the trial court, the defendant is without relief as to this issue.

## C. Consecutive Sentencing

Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria apply:

> (1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) [t]he defendant is an offender whose record of criminal activity is extensive;
>
> (3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) [t]he defendant is sentenced for an offense committed while on probation; or

-14-

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

If the court concludes that the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are unnecessary for the other categories of Tennessee Code Annotated section 40-35-115(b). *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

The trial court found that the defendant was a dangerous offender and that consecutive sentencing was "necessary to protect society from the defendant's unwillingness to lead a productive life." The court further found that fourteen years, the aggregate length of the sentences, "reasonably relate[d] to the offense[s] [for] which the defendant stands convicted." (Id.) With regard to the two sentences stemming from this case, the trial court made appropriate findings supported by the record and did not abuse its discretion in imposing consecutive sentences.

The defendant also argues that "[i]t was inappropriate for the trial court to order that the sentence run consecutive to the parole violation in Wisconsin." First, the trial court ordered the sentences to run consecutive to the defendant's *sentence* in Wisconsin, for which the defendant was on parole, as stipulated by the parties. The trial court did not run the sentence consecutive to a parole violation because Wisconsin had not ruled on the matter at the time of the sentencing hearing. Secondly, the Tennessee Rules of Criminal Procedure provide that a trial court should order a sentence to run consecutively to "any additional sentence or portion thereof" that resulted from a conviction in another state. Tenn. R. Crim. P. 32(2)(B). Additionally, Rule 32 requires a court to impose consecutive sentences when a defendant commits a felony while on parole for another felony. Therefore, under Rule 32, the trial court appropriately ordered the defendant's sentences to run consecutively to his sentence from Wisconsin.

**Conclusion**

-15-

Based on the foregoing reasons, we affirm the judgments of the trial court.

_____

J.C. McLIN, JUDGE